**TRANSAMERICA INSURANCE SERVICES, Appellant,**

v.

**Andrew J. KOPKO, as Trustee, 545 Service Corporation and Citizens Development Company, Appellees.**

**No. 37S03–9105–CV–357.**

Supreme Court of Indiana.

May 14, 1991.

James D. McQuillan, Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellant.

Fred M. Cuppy, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellees.

## ON CIVIL PETITION TO TRANSFER

GIVAN, Justice.

Andrew J. Kopko, as trustee of a land development trust, was named in a lawsuit brought by persons who had purchased a home on land which later settled, damaging the home. Kopko had an insurance policy with Transamerica Insurance Services. Transamerica, however, denied liability and refused to defend Kopko on the ground that he was being sued for his deliberate and fraudulent actions, and further that the subject property had been sold by him to an intermediate party from whom the plaintiffs in the lawsuit had purchased the property; thus the alienation clause in the insurance contract prevailed, relieving Transamerica of liability.

The trial court entered summary judgment in favor of Kopko and against Transamerica. In a two-to-one decision, the Court of Appeals affirmed the trial court. *Transamerica Ins. Co. v. Kopko* (1991), Ind.App., 559 N.E.2d 322. We now grant transfer, set aside the opinion of the Court of Appeals, and reverse the trial court.

In 1977, a joint venture between 545 Service Corporation and Citizens Development Company to develop a subdivision in Dyer, Indiana resulted in the creation of East Dyer. In 1977 and 1979, soil samples were taken to determine if the property was suitable for development. Kopko received a report prepared by Louis K. Walter, Jr. Associates to the effect that compressibility problems existed in the sub-soil, recommending foundational and footing specifications as well as removal and replacement of compressed organic peat material before any building was undertaken on the property.

Subsequently, Waggoner Builders, Inc. purchased Lot 98 in the subject subdivision. Waggoner soon discovered the sub-soil condition which it cured by extensive excavation and backfilling with more suitable soil. They built a house on that lot in late 1982. Waggoner then purchased Lot 96 which is the subject lot of this litigation.

At that time, Waggoner was given a credit against the purchase price of the new lot to compensate them for the expense they incurred in correcting the soil conditions on the previous lot. However, Waggoner proceeded to build a house on Lot 96 without any excavation or backfilling and sold it to Thomas and Ruthann Reynolds, who are the plaintiffs suing Kopko and others because their house settled due to the instability of the sub-soil.

Upon receiving notice of the litigation, Kopko notified Transamerica claiming that under his policy with them they should defend him in the lawsuit. However, they denied coverage on two grounds: 1) that the Reynolds' suit did not arise out of an "occurrence" as defined in Kopko's policy, and 2) that the alleged property damage occurred on property alienated by Kopko prior to the injury.

■ The insurance contract defined an occurrence as: "An accident ... neither expected nor intended from the standpoint of the insured." We cannot see how the damage to the Reynolds' home could be construed as an "occurrence" under the

insurance contract. Kopko had received the soil report long before the Reynolds' house was built. With full knowledge of the report, Kopko sold Lot 98 to Waggoner who incurred additional expense in preparing the lot for construction due to the unstable sub-soil. When Waggoner purchased Lot 96, Kopko reimbursed him for the expense he previously had incurred. Given this set of circumstances, we cannot say that as far as Kopko was concerned the damage to the Reynolds' house was "an accident . . . neither expected nor intended from the standpoint of the insured."

■ As to the alienation issue, the facts are clear that Waggoner had purchased Lot 96 from Kopko before the construction on the Reynolds' house was started. It therefore is obvious that alienation had occurred and the purposes for which Transamerica's policy had been issued were terminated as to that lot.

■ When the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend. *Cincinnati Ins. Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100; *see also American States Ins. Co. v. Aetna Life and Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510.

■ Kopko claims that Transamerica should defend him in the lawsuit because the Reynolds' complaint not only sounds in deliberate tort and fraud but also sounds in negligence. There is no question that if the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed, so long as there is an element of negligence to be determined. The insurer's duty to defend is broader than its duty to pay. *See e.g. Heshelman v. Nationwide Mut. Fire Ins. Co.* (1980), Ind.App., 412 N.E.2d 301; *Seaboard Surety Co. v. Gillette Co.* (1984), 64 N.Y.2d 304, 476 N.E.2d 272, 486 N.Y.S.2d 873.

Kopko bases this contention on two theories: First, that the complaint filed by the Reynolds not only charged deliberate tort and fraud but also charged that the defendants "acted in concert to conceal said information from Reynolds by failing, refusing and neglecting to inform Reynolds of said defective and unsuitable soil conditions." The fact the Reynolds' pleading used the word "neglecting" does not necessarily make it an allegation of negligence. This terminology used in the Reynolds' complaint was used in the same sentence with and referred to their allegation that "notwithstanding having the knowledge that soil conditions were defective and unsuitable the defendants" refused and neglected to inform them. Thus it becomes apparent that the use of the word "neglecting" was referring merely to their accusation of intentionally fraudulent conduct on the part of the defendants.

Second, Kopko claims that since he testified that he "forgot" about the sub-soil condition, he thus was merely negligent if liable at all. Kopko's attempt to defend and to explain his action by saying he merely "forgot" is possibly a matter of defending against the allegations in the Reynolds' complaint. However, it does not change the theory of that complaint, which sounds entirely in intentional tort and fraud.

Whether in subsequent litigation he may convince a jury that his forgetfulness should excuse him, this does not change the theory of the plaintiffs' case, upon which Transamerica is entitled to rely in declining to defend Kopko for his alleged deliberate and fraudulent conduct. Under the theory of the complaint, the occurrence of the subsidence of the house certainly was not "an accident neither expected nor intended" so far as Kopko was concerned.

■ The duty to defend is determined solely by the nature of the complaint. *Cincinnati, supra.* Accordingly, Kopko's proposed defense to the complaint, that he "forgot," does not change the nature of the action. Transamerica's decision to decline to defend Kopko was fully justified.

The Court of Appeals opinion is set aside and the trial court is reversed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER, J., concurs in result without separate opinion.

DICKSON, J., dissents without separate opinion.