**INTEGON, a GMAC Insurance Company, Appellant–Plaintiff,**

v.

**Mike SINGLETON and Samantha Singleton, Appellees–Defendants.**

**No. 22A01–0301–CV–13.**

Court of Appeals of Indiana.

Sept. 16, 2003.

---

Stanley F. Collesano, Tyra & Collesano, Indianapolis, IN, Attorney for Appellant.

## OPINION

SHARPNACK, Judge.

Integon, a GMAC Insurance Company ("Integon"), appeals the trial court's denial of its motion for summary judgment on its declaratory judgment complaint against Mike Singleton ("Mike") and Samantha Singleton ("Samantha"). Integon raises three issues, which we consolidate and restate as whether Integon had a duty to defend and indemnify its insured under the insurance policy where the insured's actions were alleged to be so willful and wanton as to be intentional misconduct. We affirm.

The relevant facts designated by Integon follow. Mike entered into a motorcycle insurance policy with Integon that covered his 1988 Honda motorcycle for the period from July 15, 1999 to July 15, 2000 ("Policy"). The Policy provided the following liability coverage: "**We** will pay damages, except punitive or exemplary damages, for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an **auto accident**." Appellant's Appendix at 19 (emphasis in original). The Policy defined "accident" as "a sudden, unexpected, and unintended occurrence." *Id.* at 18. The Policy also excluded coverage for "[b]odily injury or property damage caused intentionally by or at the direction of an **insured**." *Id.* at 19 (emphasis in original).

On August 2, 1999, Mike was driving his motorcycle, and his wife, Samantha, was a passenger.[1] They were involved in an accident that caused injuries to Samantha. Samantha filed a complaint against Mike and alleged the following:

3.  That while a passenger on the motorcycle, [Mike], despite entreaties

---

1. According to Integon, Mike and Samantha divorced sometime after August 2, 1999.

from [Samantha], operated the motorcycle in a manner that was so willful and wanton in its disregard for the safety of [Samantha] to amount to intentionally (sic) misconduct on the part of [Mike].

4. That as a direct result of the wanton and willful misconduct on the part of [Mike], the motorcycle he was operating was caused to run off the road and crash, thereby ejecting [Samantha] from the motorcycle and causing injury to her person.

5. As a direct and proximate result of the misconduct on the part of [Mike], [Samantha] was caused to suffer grievous, painful and permanent injuries to her person, including a broken back and neck, was caused to incur substantial medical expenses and was caused to suffer disability, both temporary and permanent to her person; she was also caused to suffer a serious loss of wages as a result of the misconduct of [Mike].

Appellant's Appendix at 5–6.

In response to Samantha's complaint, Integon filed a complaint for declaratory judgment against Mike and Samantha. Integon requested that the trial court find, in part, that pursuant to the Policy Integon had no duty to defend or indemnify Mike.[2] Integon filed a motion for summary judgment, alleging that the incident was not an "accident" as defined by the Policy and that the Policy excluded coverage for intentional acts. Samantha did not respond to the motion for summary judgment. After a hearing on the motion, the trial court ordered the parties to file briefs on whether willful and wanton misconduct constitutes an intentional act. Both parties submitted briefs on this issue. Integon argued that willful and wanton misconduct is "equivalent to intentional (mis)conduct." *Id.* at 55. Samantha argued that "wanton or willful misconduct is more than negligence and more than recklessness but … it falls short of intentional tort wherein the consequences of the tort must be intended by the doer." *Id.* at 63. The trial court denied Integon's motion for summary judgment because it found that the willful and wanton misconduct issue was a question of fact for the jury.

■ Integon appeals the trial court's denial of its motion for summary judgment. Initially, we note that Samantha has failed to file an appellee's brief. "When an appellee does not submit a brief, an appellant may prevail by making a prima facie case of error." *Allstate Ins. Co. v. Bradtmueller*, 715 N.E.2d 993, 995 (Ind. Ct.App.1999), *trans. denied.* "The prima facie error rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee." *Id.* at 995–996.

On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 537–538 (Ind.2002); *see* Ind. Trial Rule 56. The moving party must designate suffi-

---

2. Mike did not appear or file an answer to Integon's complaint. Thus, the trial court granted a motion for default judgment against him. Samantha filed an appearance, but did not file an answer to Integon's complaint. Thus, the trial court also granted a motion for default judgment against her. However, Samantha filed a motion to set aside the default judgment, and a decision is pending on this motion.

cient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

Integon argues that it has no duty to defend or indemnify Mike. With respect to whether an insurer has a duty to defend, our supreme court has held that:

> [w]hen the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend. There is no question that if the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed, so long as there is an element of negligence to be determined. The insurer's duty to defend is broader than its duty to pay.

*Transamerica Ins. Services v. Kopko,* 570 N.E.2d 1283, 1285 (Ind.1991). Further, "[t]he duty to defend is determined solely by the nature of the complaint." *Id.; cf. Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 43 (Ind.2002) ("Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim is patently outside of the risk covered by the policy, the insurer may properly refuse to defend."). Integon designated only Samantha's complaint and the Policy in support of its motion for summary judgment. Thus, we must determine whether Integon had a duty to defend Mike based upon the allegations of the complaint.

Integon argues that, because Samantha alleged that Mike's actions were so willful and wanton "to amount to intentionally (sic) misconduct," Mike's actions were intentional and not covered by the Policy. Appellant's Appendix at 5. Our supreme court addressed a similar argument in *Transamerica,* 570 N.E.2d at 1284–1285. There, homeowners filed a complaint against subdivision developers and others as a result of settling of the foundation of their house. *Id.* at 1284. The complaint alleged not only a deliberate tort and fraud but also that the defendants "acted in concert to conceal said information from [the homeowners] by failing, refusing and neglecting to inform [the homeowners] of said defective and unsuitable soil conditions." *Id.* at 1285. The insurer denied coverage to the developer. *Id.* at 1284. The developer claimed that the insurer should defend him in the lawsuit because the "complaint not only sound[ed] in deliberate tort and fraud but also sound[ed] in negligence." *Id.* at 1285.

Our supreme court held that the fact the homeowners' complaint "used the word 'neglecting' does not necessarily make it an allegation of negligence." *Id.* Rather, the "terminology used in the [homeowners'] complaint was used in the same sentence with and referred to their allegation that 'notwithstanding' having the knowledge that soil conditions were defective and unsuitable the defendants' refused and neglected to inform them." *Id.* Consequently, our supreme court held that it was "apparent that the use of the word 'neglecting' was referring merely to their accusation of intentionally fraudulent conduct on the part of the defendants." *Id.* Thus, "[u]nder the theory of the complaint, the occurrence of the subsidence of the house certainly was not 'an accident neither expected nor intended' so far as [the developer] is concerned." *Id.*

Here, Samantha's complaint alleged that "while a passenger on the motorcycle,

[Mike], despite entreaties from [Samantha], operated the motorcycle in a manner that was so willful and wanton in its disregard for the safety of [Samantha] to amount to intentionally (sic) misconduct on the part of [Mike]." Appellant's Appendix at 5. Samantha alleged willful and wanton conduct to avoid application of Indiana's Guest Statute, Ind.Code § 34–30–11–1, which provides that:

> The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:
>
> \* \* \* \* \*
>
> (2) the person's spouse;
>
> \* \* \* \* \*
>
> resulting from the operation of the motor vehicle while the ... spouse ... was being transported without payment in or upon the motor vehicle unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle.

Thus, under the Guest Statute, because Mike and Samantha were married at the time of the accident, Mike would not be liable for Samantha's injuries unless her injuries were caused by Mike's "wanton or willful misconduct."[3] Upon a review of the Samantha's complaint, it is apparent that Samantha was attempting to allege

wanton or willful misconduct in the complaint to avoid application of Indiana's Guest Statute. As in *Transamerica,* the use of the additional phrase "to amount to intentionally (sic) misconduct" was merely extraneous language used to emphasize the alleged wanton or willful misconduct. We cannot say based upon the face of the complaint that Samantha was alleging that Mike actually intended that her injuries occur. *See, e.g., Transamerica,* 570 N.E.2d at 1285. Consequently, we must determine whether Integon has a duty to defend Mike based upon the allegation of the complaint that Mike engaged in wanton and willful misconduct.

The Policy provided the following liability coverage: "**We** will pay damages, except punitive or exemplary damages, for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an **auto accident.**" Appellant's Appendix at 19 (emphasis in original). The Policy defined "accident" as "a sudden, unexpected, and unintended occurrence." *Id.* at 18. The Policy also excluded coverage for "[b]odily injury or **property damage** caused intentionally by or at the direction of an **insured.**" *Id.* at 19 (emphasis in original). Integon argues that Mike's actions were intentional and, thus, do not meet the definition of an accident and are also excluded under the intentional acts exclusion.

---

**3.** In *Duncan v. Duncan,* we defined wanton or willful misconduct as follows:

> Wanton or willful misconduct requires that the host-driver be: 1) conscious of her misconduct; 2) motivated by reckless indifference for the safety of her guest; and 3) know that her conduct subjects her guest to a probability of injury. The question of whether the defendant acted willfully or wantonly "should be determined by a consideration of [the defendant's] whole course of conduct leading up to the accident and

the inquiry will not be confined to occurrences at the immediate time and place thereof." A driver's mistake or error in judgment alone is insufficient to establish wanton or willful misconduct. Rather, the plaintiff must show that the driver had an adverse or perverse attitude towards her guest such that she was indifferent to the consequences of her conduct.

764 N.E.2d 763, 767 (Ind.Ct.App.2002) (internal citations omitted), *reh'g denied, trans. denied.*

This court has held that willful or wanton actions are not equivalent to intentional actions. In *National Mutual Ins. Co. v. Eward*, 517 N.E.2d 95 (Ind.Ct.App.1987), the driver of a vehicle was intoxicated and struck a friend who was attempting to get into the vehicle. *Id.* at 97–98. The insurer filed a declaratory judgment complaint, requesting that the trial court determine whether it was obligated to defend and indemnify the insured. *Id.* at 97. The trial court found for the insured, and the insurer appealed. *Id.*

On appeal, the insurer argued, in part, that the victim's injuries were not caused by an "accident" as defined by the policy. *Id.* at 99–100. The policy defined an accident, in part, as "neither expected nor intended." *Id.* at 100. The insurer argued that because the driver was intoxicated, his actions were willful and wanton as a matter of law. *See Williams v. Crist*, 484 N.E.2d 576 (Ind.1985) (holding that evidence that the driver was intoxicated is sufficient to show willful or wanton misconduct within the meaning of the Indiana Guest Statute). Further, the insurer argued that the definition of willful was the same as "intended or expected" and, thus, the injuries were not an accident under the policy. *Eward*, 517 N.E.2d at 100. As a result, the insurer "urge[d] us to find that the liability standard for the purposes of the Guest Statute [was] the same as the contractual standard under which it [could] enforce an exclusion." *Id.* We disagreed with the insurer's analysis and held that:

> The facts of this case reveal that [the driver] ... was intoxicated. But, there was absolutely no evidence from which the trial court could conclude he intentionally and maliciously used the van to strike [the victim] or to cause him any injury. While a party may be presumed to be acting willfully and wantonly for the purpose of establishing liability under the Guest Statute, intent should be

specifically established by the evidence for a party's conduct to fall within the exclusionary clause of this policy.

*Id.* at 101. Consequently, willful and wanton misconduct is not necessarily the same as intentional conduct. While there may be some instances where willful and wanton misconduct is intentional conduct, we must determine whether Integon designated evidence specifically establishing Mike's intent.

Although Samantha alleged that Mike's actions were willful or wanton, Integon did not designate any specific evidence from which the trial court could have concluded that Mike's actions were intentional. As the party moving for summary judgment, Integon had the burden of demonstrating that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Integon failed to meet its burden. Under the evidence before us, we cannot say that the incident was not "a sudden, unexpected, and unintended occurrence" or that Samantha's injuries were "caused intentionally by or at the direction" of Mike. Appellant's Appendix at 18–19. As a result, we cannot say that the nature of Samantha's claim is "obviously not covered" by the Policy. Consequently, the trial court did not err by denying Integon's motion for summary judgment.

For the foregoing reasons, we affirm the trial court's denial of Integon's motion for summary judgment.

Affirmed.

BARNES and RILEY, JJ. concur.