Samuel NEAL, Delores Neal, and Hometown Transmissions, Inc., Appellants–Plaintiffs,

v.

William J. CURE, Elizabeth J. Cure, United States Fidelity and Guaranty Company and Hoosier Insurance Company, Appellees–Defendants.

No. 49A04–0908–CV–468.

Court of Appeals of Indiana.

Nov. 24, 2010.

---

George M. Plews, Peter M. Racher, Jonathan P. Emenhiser, Plews Shadley Racher & Braun LLP, Indianapolis, IN, Attorneys for Appellants.

Frank J. Deveau, Michael D. Chambers, Bradley R. Sugarman, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

William and Elizabeth Cure owned commercial property in Martinsville. They leased it from 1986 to 1991 to a dry-cleaning tenant, Masterwear, who used perchloroethylene ("PCE") as a solvent. In 1996, the Neals, who own property nearby and operated a business there, were having health problems. The value of their property had been decreased by PCE in the soil and in the air inside their building. The Neals sued Masterwear and the Cures for environmental contamination under the Environmental Legal Act ("ELA"),[1] nuisance, trespass, and negligence. The Cures were granted summary judgment on all four theories of liability.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Cures' property abutted both North Main Street and West Washington Street in Martinsville, Indiana. Until 1983, the Cures operated a furniture business at that location. From December 1985 to November 1991, the Cures leased a portion of the property to Masterwear.

James and Linda Reed owned Masterwear, a business that washed and dry

---

1. Ind.Code ch. 13–30–9. The Neals settled their claims against Masterwear and its owner, and dismissed them from this action.

cleaned industrial garments, gloves, and towels. Masterwear was in operation only while it was on the Cures' property. One of the chemicals Masterwear used to dry clean fabrics was PCE.[2]

Samuel and Delores Neal own a building near the Cures' building. The Neals have operated a transmission and automobile repair shop, Hometown Transmissions, in that building since 1982. In October of 2006, the Neals sued the Cures seeking compensation for personal injuries, property damage, and environmental remediation based on PCE that allegedly came from the Cures' property. The Neals and the Cures both moved for summary judgment, and after a hearing, the court granted summary judgment to the Cures.

## DISCUSSION AND DECISION

Our standard of review of a summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence demonstrates there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Integon v. Singleton,* 795 N.E.2d 511, 513 (Ind.Ct.App.2003). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden

shifts to the non-moving party to come forth with contrary evidence.[3] *Id.* at 513–14. The court must accept as true those facts alleged by the non-moving party, construe the evidence in favor of the non-moving party, and resolve all doubts against the moving party. *Id.* at 514.

"Although the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we 'carefully assess the trial court's decision to ensure that party he was not improperly denied his day in court.'" *McSwane v. Bloomington Hosp. and Healthcare Sys.,* 916 N.E.2d 906, 909–10 (Ind.2009). Our standard is not altered when cross-motions for summary judgment are filed; we consider each motion separately to determine whether the moving party was entitled to judgment as a matter of law. *Stewart v. TT Commercial One, LLC,* 911 N.E.2d 51, 55 (Ind.Ct.App. 2009), *trans. denied sub nom. Stewart v. Thompson,* 919 N.E.2d 557 (Ind.2009). Nor is our standard of review altered by a trial court's entry of findings of fact; we are not bound by those findings, but they aid our review by explaining the trial court's reasoning. *Id.*

The legislature has prohibited a laundry list of activities that may damage the environment. *See* Ind.Code § 13–30–2–1.

**2.** The United States Agency for Toxic Substances and Disease Registry states " 'levels of 216 ppm [parts per million] [of PCE] or more produce respiratory tract irritation' and that 'headaches have been observed at exposures of 100 to 300 ppm.'" *Cunningham v. Masterwear Corp.,* 569 F.3d 673, 675 (7th Cir.2009).

**3.** The Neals argue much of the evidence the Cures cite was never designated to the trial court. The Neals are correct that evidence not specifically designated cannot be considered on appeal of a summary judgment:

No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant

thereto shall have been specifically designated to the trial court.

T.R. 56(H). The entire designation must be in a single place because "courts and opposing parties should not be required to flip from one document to another to identify the evidence a party claims is relevant to its motion." *Filip v. Block,* 879 N.E.2d 1076, 1081 (Ind.2008), *reh'g denied.*

We acknowledge much of the evidence to which the Cures direct us was not properly designated and we accordingly disregard it. However, there remains sufficient properly-designated evidence to permit summary judgment for the Cures.

The release of PCE might violate four subsections:

A person may not do any of the following:

(1) Discharge, emit, cause, allow, or threaten to discharge, emit, cause or allow any contaminant or waste, including any noxious odor, either alone or in combination with contaminants from other sources, into:

(A) the environment . . .

in any form that causes or would cause pollution that violates or would violate rules, standards, or discharge or emission requirements adopted by the appropriate board under the environmental management laws.

\*　　\*　　\*　　\*　　\*　　\*

(2) Increase the quantity or strength of a discharge of contaminants into the waters . . . without prior approval of the department.

(3) Deposit any contaminants upon the land in a place and manner that creates or would create a pollution hazard that violates or would violate a rule adopted by one (1) of the boards.

(4) Deposit or cause or allow the deposit of any contaminants or solid waste upon the land, except through the use of sanitary landfills, incineration, composting, garbage grinding or another method acceptable to the solid waste management board.

Ind.Code § 13-30-2-1. "Solid waste" is "any garbage, refuse, . . . or other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, or agricultural operations or from community activities." Ind.Code § 13-11-2-205.

### 1. *Nuisance*

■ Ind.Code § 32-30-6-6 provides "whatever is (1) injurious to health; (2) indecent: (3) offensive to the senses; or (4) an obstruction to the free use of property so as essentially to interfere with the comfortable enjoyment of life or property is a nuisance, and the subject of an action." Contaminating the property of another is a nuisance. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 978 (Ind.1998), *reh'g denied.*

The trial court granted summary judgment on the nuisance claim on the grounds the Cures did not know about the PCE contamination and did not exercise control over Masterwear's operations. As there was no designated evidence the Cures had such knowledge or exercised such control, this was not error.

■ A landlord is generally not liable for a tenant's nuisance, but can be held responsible for a tenant's creation or maintenance of a nuisance if the landlord leases property to the tenant for the purpose of opening a business that by its character is a nuisance; [4] if the landlord knows about the tenant's nuisance and could stop it, but does not; or if the landlord consents to the tenant's maintenance of a nuisance. *See Joseph Schlitz Brewing Co. v. Shiel*, 45 Ind.App. 623, 88 N.E. 957, 958 (1909), *reh'g denied, trans. denied.* In *Schlitz Brewing*, we explained:

It is elementary that no one can be held liable for a nuisance, unless the injurious consequences complained of are the natural and proximate result of his acts, or his failure to perform some duty. It is the well-settled rule that a landlord cannot be held liable for a nuisance created upon the demised premises by the tenant, unless the premises were let for a purpose which, by its character, a nuisance.

---

4. Neither party argues a dry cleaner is, by its

ant during the tenancy, and without the consent of the landlord.

*Id.* at 958.

■ In *Brown v. Powell,* 92 Ind.App. 467, 176 N.E. 241, 243 (1931), we again acknowledged the general rule regarding a landlord's liability where the premises itself is not a nuisance, "and a nuisance has been created by the tenant during the period of tenancy without the participation of the landlord directly or indirectly, and there has been no releting [sic] of the premises by the landlord to the tenant, with knowledge of the existence of the nuisance":

> In order to charge the landlord the nuisance must necessarily result from the ordinary use of the premises by the tenant or for the purpose for which they were let; and where the ill results flow from the improper or negligent use of the premises by the tenant, or in other words, where the use of the premises may or may not become a nuisance according as the tenant exercises reasonable care or uses the premises negligently the tenant alone is chargeable for the resulting damage arising therefrom.

*Id.* (quoting Joyce's Law of Nuisances, § 461). *And see Dammeyer v. Vorhis,* 63 Ind.App. 427, 113 N.E. 764, 766 (1916):

> [F]rom an examination of the many authorities from other jurisdictions, we feel warranted in stating the rule to be: That where property is leased, and at the time is not in such a condition as to constitute a nuisance in and of itself, but becomes so only by the act of the tenant, while in possession, and injury occurs during such possession, the owner is not liable[.]

Thus, to date, under Indiana law, a landlord must have *actual* knowledge of the

tenant's nuisance in order to be held liable therefor.

■ The Neals note evidence drums of PCE and waste oil were on the property in plain view, the Cures knew Masterwear was using PCE, William Cure visited the property on occasion, William Cure saw barrels of liquid but did not inquire about them, and William Cure felt Masterwear was a "sloppy housekeeper." (App. at 868). Other tenants complained to Cure about Masterwear, but the record does not indicate those complaints were about PCE discharge. The Neals note a report after a 1991 spill indicated PCE was present, but they direct us to no evidence the Cures were aware of that report. The Cures were aware of the 1991 spill, but were told "it didn't amount to anything." (App. at 870.) But the Neals direct us to no evidence the Cures had actual knowledge of PCE contamination that could result in nuisance.

■ The Neals invite us to adopt Section 837 of the Second Restatement of Torts, pursuant to which the Cures would be liable if they "knew," "should have known," or "had reason to know" Masterwear was creating a nuisance. That section states:

> (1) A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and (a) at the time of the lease the lessor consents to the activity or *knows or has reason to know that it will be carried on,* and (b) he knows or should know that it will necessarily involve or is already causing the nuisance.

Restatement (Second) of Torts, Section 837 (emphasis added).[5] The Neals ac-

---

5. The Neals also cite Section 834 of the Sec-    ond Restatement of Torts, which provides:

knowledge "no Indiana case has specifically adopted Section 837." (Appellants' Br. at 20.)

As Section 837 does not reflect current Indiana law, we must decline the Neals' invitation to adopt it. The Restatement would permit liability without a landlord's actual knowledge if the landlord "should have known" or "had reason to know" of the tenant's nuisance. But our Indiana decisions are clear that in a situation like that before us, only actual knowledge will subject a landlord to liability for a tenant's nuisance. *See Schlitz Brewing*, 88 N.E. at 958 (unless landlord leases property for the purpose of opening a business that by its character is a nuisance, landlord is liable only if he or she knows about the tenant's nuisance and could stop it, but does not, or consents to the maintenance of the nuisance).

■ An "actual knowledge" requirement cannot be satisfied by a showing a defendant "should have known" or "had reason to know." *See, e.g., Bailey v. State Farm Mut. Auto. Ins. Co.*, 881 N.E.2d 996, 1001 (Ind.Ct.App.2008) (defendant must have actual knowledge the driver was intoxicated when he entrusted the vehicle to him—evidence that the owner could have known or should have known of the driver's unfitness to drive is not sufficient to impose liability) (addressing negligent entrustment); *Dickison v. Hargitt*, 611 N.E.2d 691, 695 (Ind.Ct.App.1993) (landlord must have actual knowledge of a hidden defect before a duty to warn of the defect arises; it is not enough that the landlord should have known of the hidden defect) (addressing injuries caused by latent defects unknown to the tenant and not disclosed by the landlord).

Because no designated evidence demonstrated the Cures had the actual knowledge required by Indiana law to be liable for Masterwear's alleged nuisance, we affirm the trial court's grant of summary judgment to the Cures on this count.

### 2. The ELA

■ The trial court granted summary judgment to the Cures on the Neals' claim under the ELA, which provides:

A person may, regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

Ind.Code § 13–30–9–2. The trial court determined the Neals had not demonstrated the Cures had "caused or contributed to the release of a hazardous substance," as the Neals asserted no "affirmative action on the part of the Cures causing or contributing to contamination. Any alleged inaction on the part of Mr. Cure ... cannot form the basis for determining that the Cures caused or contributed to the con-

---

"One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." The Neals argue the Cures should not be excused for "[w]illfully remaining 'ignorant'" of Masterwear's pollution. (Appellant's Br. at 23.) Because Cure had seen the barrels sitting around the lot, had received complaints from neighbors, knew about a spill, and had received an environmental report in 1999, the Neals argue the Cures participated in the pollution to a sufficient extent to be held liable for the nuisance under Section 834 of the Second Restatement of Torts. For the reasons explained in our discussion of whether the Cures "contributed" to Masterwear's pollution, we must decline to apply that section to the facts before us.

tamination." (App. at 67.) On appeal, the Neals do not argue the Cures "caused" the contamination, thus we concern ourselves only with whether the evidence demonstrated the Cures "contributed" to the contamination.

The legislature did not define or explain in the ELA what it means to "contribute" to contamination, and thus we must follow our general rules of statutory construction:

> When courts set out to construe a statute, the goal is to determine and give effect to the intent of the legislature. The first place courts look for evidence is the language of the statute itself, and courts strive to give the words their plain and ordinary meaning. We examine the statute as a whole and try to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result.

*Cooper Industries, LLC v. City of South Bend,* 899 N.E.2d 1274, 1283 (Ind.2009) (internal citations omitted). In addition, we "look to the underlying purpose of these provisions and to similar Code sections for guidance." *Id.* at 1284.

■ In *Cooper,*[6] our Indiana Supreme Court noted: "it is clear from the plain language of Ind.Code ch. 13–30–9 that the legislature enacted the ELA statute to shift the financial burden of environmental remediation to the parties responsible for creating contaminations." *Id.* Thus, our

goal when construing the term "contribute" should be to hold accountable all parties "responsible for creating contaminations."

According to the American Heritage Dictionary, "contribute" means "to help bring about a result" or "act as a factor." *The American Heritage Dictionary of the English Language* (4th Ed.2004), http://dictionary.reference.com/browse/contribute (accessed July 19, 2010).[7] Our Indiana Supreme Court, in a 1940 discussion of contributory negligence, noted " 'to contribute is to help to cause or to furnish some aid in causing the result.' " *Cousins v. Glassburn,* 216 Ind. 431, 438, 24 N.E.2d 1013, 1016 (1940) (quoting Ballentine's Law Dictionary).

In *City of Martinsville v. Cure,* 2006 WL 2710628 (S.D.Ind.2006), Judge Young held the Cures did not contribute to the release of PCE:

> Under the [Indiana] ELA, liability arises only for one who "caused or contributed" to the release of a hazardous substance. The phrase "caused or contributed" is not defined; therefore, the court is to give the words their plain and ordinary meaning. When the legislature has not defined a word, we give the word its common and ordinary meaning. In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. Each term of the phrase "caused or contributed" requires some involvement by the actor which produces a result. By all accounts, the Cures were not involved in the alleged release of hazardous substances and had no

---

6. *Cooper* addressed when the statute of limitations began running under the ELA and whether liability under the ELA could transfer to a new corporation formed by merger. *See generally,* 899 N.E.2d 1274.

7. The Seventh Edition of Black's Law Dictionary (1999) does not contain an entry for "contribute," but does define "contributory" as "[t]ending to bring about a result." Black's Law Dictionary 329 (1999).

knowledge of the release. Therefore, the Cures cannot be held liable on the City's IELA claim. The City's motion for partial summary judgment on liability is therefore **DENIED** with respect to the City's IELA claim against the Cures.

*Id.* at *4 (internal citations, quotations, and footnote omitted). We are persuaded by Judge Young's analysis and agree that the plain language of the statute does not permit an ELA action against landlords who "[b]y all accounts ... were not involved in the alleged release of hazardous substances and had no knowledge of the release." *Id.* Summary judgment on the ELA count was not error.

### 3. *Trespass*

■ To demonstrate trespass, a plaintiff must prove he was in possession of land and the defendant entered the land without right. *Lever Bros. Co. v. Langdoc,* 655 N.E.2d 577, 581–82 (Ind.Ct.App.1995). A defendant can be liable for trespass if he releases noxious material that travels onto and damages another person's property. *See id.* at 582 (holding Lever Brothers liable for trespass when fatty, greasy substance unlawfully released into public sewer system seeped into neighbor's basement and caused damage). The question before us is whether a landlord can be liable for trespass when the noxious material was released by a tenant.

The trial court granted summary judgment to the Cures on the Neals' claim for trespass, concluding (1) historically, under Indiana law, a landlord has not been liable for a tenant's trespass unless the landlord authorized or participated in the trespass with "some intentional act by the landlord directly related to the trespass," (App. at 62), and (2) Indiana should not adopt the "acquiesced" standard the Neals offered that would expand the circumstances under which a landlord could be liable. (*Id.*) The trial court cited *Kinser v. Dewitt,* 7 Ind.App. 597, 34 N.E. 1014, 1015 (1893), where a landowner, the City of Anderson, granted contractors the right to construct a sewer along one of its streets and we held: "and if [the contractors], in the construction thereof, unlawfully entered upon appellee's property, to her injury, [the contractors] alone are answerable therefor.").

The Neals rely on decisions from other jurisdictions that impose liability on landlords when the landlord acquiesced in the tenant's creation of a nuisance.[8] *See, e.g., Rudd v. Electrolux Corp.,* 982 F.Supp. 355, 360 (M.D.N.C.1997) (owner who knows about contamination on his land and does nothing to remedy the situation is responsible for the migration of that contamination to another's property); *Reynolds v. Pardee and Curtin Lumber Co.,* 172 W.Va. 804, 310 S.E.2d 870, 876–77 (1983) (holding landlord jointly liable when he knew of or acquiesced in the tenant's trespass); *Sta-*

---

8. The Neals also assert imposing liability here would be consistent with *City of Bloomington v. Wilson,* 14 Ind.App. 476, 43 N.E. 37 (1896), which they characterize as analyzing "whether a principal is liable based on whether the principal expressly or impliedly authorized the agent's trespass." (Appellant's Br. at 29.) That decision does not support the premise the Cures are liable because they "acquiesced to Masterwear's trespass." (*Id.*) We held in *Wilson* that the City could *not* be liable to a landowner for a contractor's trespass, when the City authorized the contractor to fix the

street adjacent to the landowner's property, but had not authorized the contractor to damage the adjacent land. The contractor was liable, but the City was not: "The city authorized the grading and improvement of the street, but our attention has not been called to any evidence in the record either expressly or impliedly authorizing the doing of the wrongful act of the contractor on which this action is based." 43 N.E. at 37–38. Nor have we been directed to evidence the Cures in any way "authorized" Masterwear's wrongful acts.

*ples v. Hoefke,* 189 Cal.App.3d 1397, 235 Cal.Rptr. 165, 176–77 (1987) (landlord can be liable for nuisance created by tenant when landlord leases property with knowledge that tenant would create nuisance), *review denied.*

The "acquiescence" standard is inconsistent with current Indiana law. In *Garner v. Kovalak,* 817 N.E.2d 311, 313–14 (Ind. Ct.App.2004), we restated the principle that to be responsible for a trespass a defendant must have committed an intentional act:

> [A] trespasser cannot be held liable unless a voluntary act caused his entry onto the plaintiff's property.... 'Although it is not necessary that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass, it is required for trespass that there be an intentional act and an intent to do the very act which results in the trespass.'

(quoting *Hawke v. Maus,* 141 Ind.App. 126, 131, 226 N.E.2d 713, 717 (1967)). The designated evidence does not reflect the Cures intended Masterwear's PCE pollution or committed an intentional act to that end. We therefore cannot say summary judgment for the Cures on the trespass claim was error.

### 4. *Negligence*

■■■■ A claimant asserting negligence must show that the defendant owed her a duty of care at the time the injury occurred, that the defendant's behavior did not conform to that standard of care, and that the claimant's injuries were proxi-

mately caused by the breach. *McSwane,* 916 N.E.2d at 910. The existence of a duty is to be determined as a matter of law. *Id.*

The trial court concluded the Neals had not demonstrated the Cures had a duty because: (1) the lease to Masterwear did not contain a provision imposing such a duty on the Cures, (2) the Cures did not know Masterwear was contaminating the Cures' building and soil with PCE, and (3) the 1999 Home Bank Report [9] did not indicate off-site or groundwater contamination. (*See* App. at 60–61.) The court determined the Cures learned about the PCE contamination in 2004 when they received an administrative order from the EPA that required remediation, but the Neals did not allege any breach of duty after the Cures received that report. (App. at 61.)

To recover for negligence, a plaintiff must demonstrate the defendant owed a duty to the plaintiff, the defendant breached that duty to the plaintiff, and the plaintiff's injuries were proximately caused by the defendant's breach. *Ford Motor Co. v. Rushford,* 868 N.E.2d 806, 810 (Ind.2007). Unless there is a duty, there can be no breach, and thus no liability. *Id.*

In *Hirschauer v. C & E Shoe Jobbers, Inc.,* 436 N.E.2d 107, 112–13 (Ind.Ct.App. 1982), we characterized as "well-settled" that

> [t]he relation of landlord and tenant, in the absence of stipulations to the contrary, imposes upon the tenant certain duties in connection with the use of the property, but in itself involves no idea of

---

9. In 1999, Home Bank was considering buying the site and had American Environmental Abatement Co. perform a subsurface investigation. The report noted PCE in the soil samples but did not indicate off-site contamination or risk to neighboring properties. Nor did it report groundwater contamination. (App. at 634–39). The Neals assert the "re-

sults indicated migration of the contamination, consistent with the complaints Cure had received from his neighbors years earlier." (Appellants' Br. at 10.) The pages of the record to which the Neals direct us include nothing that indicates there was "migration of the contamination" beyond the Cures' property.

representation or agency such as will render the landlord responsible to third persons for the torts of the tenants with respect to the use of the demised property.... Generally it may be said that while the landlord is liable for injuries resulting from the condition of the premises at the time of the execution of the lease and from nuisances existing thereon at that time, it is the tenant who is liable for the negligent use of the premises and for defective conditions arising subsequently to the letting of the premises, while they are in his control and possession.

(quoting 49 Am Jur.2d *Landlord and Tenant* § 908 (1970)).

The Neals argue the Cures' tort duty arose from Ind.Code § 13–30–2–1, which prohibits releasing or allowing the release of contaminants or waste, and 327 IAC 2–6–2,[10] which required the owner of a commercial facility that has a spill to communicate the spill to IDEM, to notify downstream water users, to contain the spill, to clean up the spill, and to submit reports to IDEM detailing facts of spill and cleanup.[11] They argue the Cures committed negligence *per se* because the Cures knew Masterwear was leaking noxious fumes but did nothing to stop the release, did not require Masterwear to clean up the barrels of chemical waste in the parking lot, did not notify IDEM after a spill, and did nothing to notify the neighbors.

In *Town of Montezuma v. Downs*, we explained:

Under Indiana law, an unexcused or unjustified violation of a duty dictated by a statute is negligence per se. Before determining that the violation of a statute constitutes negligence, however, the court must scrutinize the statute and consider "the purpose of the enactment, the persons whom it was intended to protect and the injuries which it was intended to prevent."

In addition to determining whether a defendant violated a duty dictated by statute, the court must also consider whether the breach was the proximate cause of any injury. "The violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation." In order for an injury to be the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed.

The Neals claim the "lessor knew or had reason to know" language would, in light of the renewals of the Masterwear lease, permit a finding that the Cures were negligent.

The Neals direct us to no Indiana decisions adopting or addressing that Restatement section, and we are aware of none. As the "lessor knew or had reason to know" standard is inconsistent with existing Indiana law, we decline to adopt it. *See, e.g., Lever Bros. Co. v. Langdoc*, 655 N.E.2d 577, 582 (Ind.Ct. App.1995) (noting a trespass action will exist *if there is a direct causal relation* between the conduct of the actor and the intrusion of foreign matter on the possessor's land causing harm). The record before us shows no such "direct causal relation" between the Cure's conduct and Masterwear's pollution.

---

10. 327 IAC 2–6–2 was repealed by the Water Pollution Control Board in 1997. 20 Ind. Reg. 1734.

11. The Neals also cite § 379(A) of the Restatement (Second) of Torts:

A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if, (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on and (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

685 N.E.2d 108, 112 (Ind.Ct.App.1997) (internal citations omitted) (involving failure to conduct inspection of gas pipeline required by federal regulation), *trans. denied.*

We decline to hold any violation of the statute by the Cures was negligence *per se.* In *Walling v. Appel Service Co., Inc.,* 641 N.E.2d 647, 652 (Ind.Ct.App.1994), Appel pumped over 500 gallons of fuel oil into the basement of the Wallings' home after the driver of its delivery truck mistook the Wallings' home for a residence where the oil was supposed to be delivered. The Wallings alleged, among other things, violation of Indiana Code § 13–7–4–1, the predecessor to Ind.Code 13–30–2–1. We declined to recognize a private cause of action for violation of that section:

> According to the Wallings, Appel's contamination of their home with fuel oil is a violation of Indiana Code § 13–7–4–1 and is negligence *per se,* which precludes summary judgment. Again, we cannot agree.

> It is true that Hoosiers may bring actions in the name of the state to protect the environment of Indiana. I.C. § 13–6–1–1(a). However, by its express terms, this statute only authorizes actions by citizens on behalf of the state for declaratory and equitable relief. The Wallings are not seeking declaratory or equitable relief against Appel on behalf of the State of Indiana. Rather, they seek recovery for their own personal injuries and for property damage to their home. Indiana Code § 13–6–1–1 only permits recourse by citizens for damage to the environment of Indiana, not damage which is personal to particular citizens.

*And see Stulajter v. Harrah's Ind. Corp.,* 808 N.E.2d 746, 748 (Ind.Ct.App.2004) (summarizing *Walling* as "declining to rec-

ognize a private cause of action for violation of IC 13–7–4–1").

For all these reasons, we cannot say summary judgment on the negligence claim was error.

## CONCLUSION

The designated evidence does not, in light of the Cures' lack of involvement in or knowledge of Masterwear's actions, give rise to a genuine issue of material fact regarding the Cures' liability for nuisance, trespass, negligence, or an ELA violation. We accordingly affirm the summary judgment for the Cures.

Affirmed.

BAILEY, J., and BARNES, J., concur.