# FOR PUBLICATION



FILED
Sep 19 2014, 10:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**N. REED SILLIMAN**
**KAREN T. MOSES**
Faegre Baker Daniels, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY P. CAFOUROS**
**JENNIFER L. WATT**
Kroger Gardis & Regas, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JDN PROPERTIES, LLC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 43A05-1312-PL-586 |
| | ) | |
| VANMETER ENTERPRISES, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Michael W. Reed, Judge
Cause No. 43C01-1101-PL-2

**September 19, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

JDN Properties, LLC, ("JDN") appeals the trial court's grant of summary judgment in favor of VanMeter Enterprises, Inc. ("VEI"). We reverse and remand.

## Issue

The sole restated issue before us is whether there is any evidence VEI caused or contributed to ground pollution in land that VEI sold JDN, as required to support JDN's claim against VEI under Indiana's Environmental Legal Actions ("ELA") statute.

## Facts

In 1983, Farm Tech, Inc., sold land to VEI located in Warsaw. J. Brock VanMeter, Sr., was the president of Farm Tech as well as the sole shareholder, director, and incorporator of VEI. After sale of the property, VEI leased the land back to Farm Tech; Farm Tech then conducted its business operations on the site. The property contained two 250-gallon underground storage tanks ("USTs") for petroleum heating fuel.

Sometime between 1988 and 1991, VanMeter, Sr., hired Thomas Moore to redirect underground water lines serving Farm Tech's facility away from a well located near the USTs, close to the southeast corner of the land's primary structure, to a different well on the property. VanMeter, Sr., told Moore that he had noticed a significant drop in the USTs fuel oil levels that could not be attributed to the facility's heating oil usage and that water drawn from the well was so contaminated with petroleum as to be unusable. While moving the water lines, Moore observed that fuel from the USTs had leaked into and saturated the surrounding soil.

2

VanMeter, Sr., died in 1994, and all of his stock in VEI was transferred to his estate. His son, J. Brock VanMeter, Jr., was named executor of the estate. VanMeter, Jr., had not been involved in the business operations of Farm Tech or VEI. In 1995, VEI sold the Warsaw property to James and Daisy Nicholas. At that time, VanMeter, Jr. filled out an environmental disclosure form and signed it on behalf of VEI. In it, VanMeter, Jr., stated that USTs previously had been located on the property but had since been removed, which was true. VanMeter, Jr., also indicated that there had never been a situation at the site "which resulted in a reportable 'release' of any hazardous substances or petroleum as required under state or federal laws[.]" App. p. 52. Additionally, VEI's corporate records failed to mention any petroleum leakage on the property. The Nicholases purchased the property without conducting environmental testing of the land.

In 2009, the Nicholases formed JDN, and they transferred title to the Warsaw property to that entity. JDN, in turned, leased the property to a company that performed soil testing of the land. That testing revealed the presence of petroleum contamination in the ground located near the southeast corner of the primary structure on the land. JDN paid $67,479.69 in pollution remediation costs, plus attorney fees.

JDN sued VEI in a three-count complaint. The first count alleged breach of contract; the second count alleged fraudulent inducement; and the third count stated a claim under the ELA. JDN moved for summary judgment as to all three counts. VEI responded with a cross-motion for summary judgment as to all three counts. The trial court denied both parties' motions for summary judgment as to counts 1 and 2 but granted summary judgment to VEI as to count 3, the ELA claim. The trial court entered findings and

3

conclusions with its order. JDN subsequently sought dismissal with prejudice of counts 1 and 2 of its complaint. The trial court granted this motion, thus making the granting of summary judgment in VEI's favor on the ELA claim final and appealable. JDN now appeals.

**Analysis**

We review the granting of a motion for summary judgment using the same standard as the trial court. Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012). A party moving for summary judgment must make a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Id. "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." Id. We will construe all factual inferences in the non-moving party's favor and resolve any doubts as to the existence of a material issue of fact against the moving party. Id. Our standard of review is not altered when parties file cross-motions for summary judgment. Decker v. Zengler, 883 N.E.2d 839, 842 (Ind. Ct. App. 2008), trans. denied. "Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." Id. Also, in the summary judgment context, a trial court's entry of findings of fact and conclusions thereon does not alter our de novo standard of review; such findings and conclusions merely aid our review by providing us with a statement of the reasons for the trial court's decision. Id.

JDN elected to pursue recovery from VEI under the ELA.[1] The legislature enacted the ELA statutes in order "to shift the financial burden of environmental remediation to the parties responsible for creating contaminations." Cooper Industries, LLC v. City of South Bend, 899 N.E.2d 1274, 1284 (Ind. 2009). The goals of the ELA are enforced through the following statute:

> A person may, regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

Ind. Code § 13-30-9-2.

The central focus of this case is whether there is any evidence that VEI caused or contributed to the petroleum contamination discovered on the land.[2] The phrase "caused or contributed" is not defined by statute, and we must give those words their plain and ordinary meaning. Reed, 980 N.E.2d at 289. "Each term of the phrase 'caused or contributed' requires some involvement by the actor which produces a result." Id. Standard English dictionaries may also be consulted in determining the meaning of this phrase. Id. A standard dictionary definition of "cause" is "'a person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or

---

[1] In cases of pollution caused by USTs, a party may file a claim under either the ELA or the specific statute governing USTs, Indiana Code Section 13-23-13-8. However, a party must choose which statute to proceed under and cannot pursue recovery under both. Ind. Code § 13-30-9-6.

[2] There is no contention in this case that the petroleum leakage did not "pose[] a risk to human health and the environment" as required to impose remediation liability under the ELA.

state.'" Id. at 289 n.10 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 356 (2002 ed.)). "Among other things, 'contribute' means 'to act as a determining factor; share responsibility for something.'" Id. (quoting AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 290 (1981 ed.)). Our goal when construing the phrase "cause or contribute" should be to hold accountable all parties "responsible for creating environmental contaminations." Neal v. Cure, 937 N.E.2d 1227, 1234 (Ind. Ct. App. 2010), trans. denied.

In Neal, this court addressed the circumstances under which a landlord may be held liable under the ELA for environmental contamination caused by a tenant. We held that the ELA does not permit actions against landlords "who '[b]y all counts . . . were not involved in the alleged release of hazardous substances and had no knowledge of the release.'" Id. (quoting City of Martinsville v. Cure, 2006 WL 2710628 (S.D. Ind. 2006)). In Neal, there was no evidence the landlords had any knowledge that their tenant was contaminating the ground with a toxic chemical; thus, we affirmed the grant of summary judgment in the landlords' favor on an ELA claim brought against them. Id.

VEI does not dispute Neal's holding, but contends there is no designated evidence either that it was involved with the petroleum pollution discovered in 2009 or that it had any knowledge of any such pollution when the property was sold in 1995. It notes that VEI was merely the landlord of the property and that VanMeter, Sr., was acting on behalf of the tenant, Farm Tech, when he hired Moore to move the water lines on the property. VEI also argues that Moore's recollection of what VanMeter, Sr., told him in the late 1980s

6

or early 1990s does not establish that the petroleum leakage occurred during VEI's ownership of the land or that VanMeter, Sr., even definitively knew about a leakage.[3]

We first conclude that the designated evidence creates a genuine issue of fact as to whether VanMeter, Sr., was aware of a petroleum leakage on the property. The reason VanMeter, Sr., hired Moore was because the well from which Farm Tech was drawing water was too contaminated with petroleum to be usable. That well was located in close proximity to the USTs, and VanMeter, Sr., wanted water to be drawn from a different well away from the USTs. VanMeter, Sr., also was aware that the fuel levels in the USTs were decreasing faster than should have been expected from normal usage. This evidence permits a reasonable inference that VanMeter, Sr., had actual knowledge that the USTs were leaking petroleum into the ground.

Furthermore, although VanMeter, Sr., technically was acting on behalf of Farm Tech when he hired Moore, his knowledge of the petroleum leakage can be imputed to VEI. We need not delve into whether VEI and Farm Tech were merely alter ego corporations, and whether the acts of one of the businesses could be imputed to the other. It is sufficient to say that when a sole shareholder or incorporator of a corporation has knowledge of facts, the corporation also may be deemed to have knowledge of such facts. See Wathen v. Greencastle Skate Place, Inc., 606 N.E.2d 887, 891 (Ind. Ct. App. 1993).

---

[3] Moore signed an affidavit regarding his recollection of the work he did for VanMeter, Sr., and what VanMeter, Sr., told him. During the summary judgment hearing, the trial court questioned whether Moore's recollection of what VanMeter, Sr., had said to him was inadmissible hearsay. However, VEI never moved to strike Moore's affidavit, nor does it argue on appeal that it should have been stricken. Also, after the hearing JDN filed a brief addressing the trial court's hearsay concerns. In its summary judgment order, the trial court gave no indication that it was sua sponte striking Moore's affidavit or any part of it. Thus, we will consider the full contents of Moore's affidavit.

Because VanMeter, Sr., was the sole shareholder and director and incorporator of VEI, it is reasonable to impute his alleged knowledge of the petroleum leakage to VEI.

VEI also contends there is a lack of evidence that the petroleum leakage discovered in 2009 occurred sometime between 1983 and 1995, when VEI owned the property. We again disagree. VEI seems to fault JDN for failing to prove with certainty when the petroleum leakage occurred. Our supreme court addressed a very similar argument in Reed and rejected it as a proper basis for granting summary judgment against a party pressing a claim under the ELA. In that case, the defendant, a steel manufacturer, argued that it was entitled to summary judgment because the plaintiff had failed to prove that hazardous substances on the plaintiff's property had come from the defendant's factory. The court disagreed, holding that the defendant had the burden of demonstrating as a matter of law that the hazardous substances originated from a source other than the factory in order to be entitled to summary judgment, and it had failed to do so. Reed, 980 N.E.2d at 287.

Here, VEI suggests, as did the trial court, that VanMeter, Jr.'s, lack of personal knowledge of any petroleum leak on the property, along with the failure of VEI's corporate documents to mention any such leakage, imposed a requirement upon JDN to submit conclusive proof that such a leak occurred during VEI's ownership of the property. For purposes of VEI's summary judgment motion, however, JDN did not have to submit such conclusive proof. It only had to designate evidence creating a genuine issue of material fact, and it did so. Viewing the designated evidence in a light most favorable to JDN, it would be reasonable to infer that the leakage of which VanMeter, Sr., and Moore were aware occurred near in time to their direct and indirect observations of the leakage, during

8

the late 1980s or early 1990s. VanMeter, Jr.'s lack of personal knowledge of any leak and the silence of VEI's corporate documents is not proof as a matter of law that there was no leak during that time frame.

We also disagree with VEI's suggestion that there is no evidence the petroleum leak discovered in 2009 was in the same location as where the USTs were located. Moore's description of where the USTs were located and where he observed the petroleum leakage precisely matches where the contamination was discovered in 2009: near the southeast corner of the land's primary structure. This certainly is enough to create a reasonable inference that the contamination discovered in 2009 was in the same place as where the USTs were located and was the same contamination Moore observed.

In light of the conflicting designated evidence in this case, it is consistent with the purposes of the ELA to permit JDN's suit against VEI to move forward. The evidence most favorable to JDN is that VEI, as a landlord, presumably received rents from Farm Tech while being fully aware that Farm Tech's use of the property was causing petroleum contamination in the ground. We conclude that a landlord who has knowledge that a tenant's use of land is causing environmental contamination, but does nothing to halt or remediate such contamination and goes on to sell that property to a third party without disclosing the property's condition, may fairly be said to "share responsibility" for or contribute to such contamination. See Reed, 980 N.E.2d at 289 n.10. The ELA clearly was intended to broaden the avenues for purchasers of property to recoup hazardous waste remediation costs and to shift the costs of such remediation onto those who were in the better position to prevent or alleviate the pollution. As between JDN and VEI, VEI was in

9

the better position to do so. This is not to say that Farm Tech could not also be liable under the ELA as a party causing or contributing to the pollution. See Peniel Group, Inc. v. Bannon, 973 N.E.2d 575 (Ind. Ct. App. 2012) (addressing ELA lawsuit brought by landlord against tenant who allegedly contaminated property), trans. denied. But Farm Tech's potential liability does not preclude VEI's liability. The ELA does not require a plaintiff to sue the person who caused or contributed to pollution, just a person. See I.C. § 13-30-9-2.

To the extent VEI implies that a party seeking recovery under the ELA must prove that a defendant both caused or contributed to pollution and had knowledge of such pollution,[4] the plain language of the statute does not require both. Rather, we believe knowledge of pollution is one way in which an owner of land may be held liable under the ELA for causing or contributing to hazardous pollution, under circumstances like those present here. Because there are genuine issues of material fact as to whether VEI had actual knowledge of petroleum contamination caused by its tenant, whether such contamination occurred during VEI's ownership of the land and whether the contamination discovered in 2009 was the same contamination discovered between 1988 and 1991, it was improper to grant VEI's motion for summary judgment.[5]

Conversely, we reject JDN's claim that it is entitled to summary judgment in its favor. The evidence we have described is conflicting as to whether VEI had knowledge of

[4] VEI's brief is not clear on this point.

[5] VEI does not argue alternative theories upon which the grant of summary judgment could be affirmed.

10

a petroleum leak occurring during its ownership of the land. Thus, there are genuine issues of material fact still to be resolved as to whether VEI caused or contributed to the petroleum contamination and a grant of summary judgment in JDN's favor would be inappropriate.

## Conclusion

There are genuine issues of material fact in this case regarding whether VEI caused or contributed to the ground contamination discovered by JDN in 2009. We reverse the grant of summary judgment in favor of VEI on JDN's claim under the ELA and remand for further proceedings.

Reversed and remanded.

FRIEDLANDER, J., and MATHIAS, J., concur.