ATTORNEYS FOR APPELLANT

David W. Stone IV
Anderson, Indiana

Stephen A. Oliver
Martinsville, Indiana

ATTORNEYS FOR AMICUS CURIAE,
INDIANA HOSPITAL ASSOCIATION

Angela M. Smith
Kimberly A. Emil
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

ATTORNEYS FOR BLOOMINGTON
HOSPITAL AND HEALTHCARE
SYSTEM

James L. Whitlatch
Holly M. Harvey
Bloomington, Indiana

ATTORNEYS FOR JEAN EELMA, M.D.

Edward J. Liptak
Jeremy M. Dilts
Bloomington, Indiana



FILED
Nov 30 2009, 3:49 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

_____

53S04-0808-CV-00420

AVA MCSWANE, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MALIA VANDENEEDE AND
DANIELLE HAYS BY AVA MCSWANE,

Appellants (Plaintiffs Below),

v.

BLOOMINGTON HOSPITAL AND
HEALTHCARE SYSTEM,

AND

JEAN M. EELMA, M.D.,

Appellees (Defendants Below).

_____

Appeal from the Monroe Circuit Court IV, No. 53C04-0602-PL-00337
The Honorable Mary Ellen Diekhoff, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 53A04-0705-CV-00243

_____

**November 30, 2009**

**Shepard, Chief Justice.**

The estate of a domestic violence victim whose former husband killed her on the way home after she insisted on leaving the hospital with him sued the hospital and the treating physician for her death. The trial court granted summary judgment on the basis of lack of duty and contributory negligence. We affirm.

**Facts and Procedural History**

Judge Mary Ellen Diekhoff has entered an excellent set of findings with her order that describe the circumstances of a serious tragedy.

On the morning of November 25, 2002, Malia Vandeneede and Monty Vandeneede, divorced but still living together, arrived at the Bloomington Hospital to request treatment for lacerations on Malia's thigh and hand. She told the hospital staff she had been thrown from a horse into a pile of brush. Triage nurse Jennifer Powell examined Malia in Monty's presence. Malia refused to request an examination of the laceration on her thigh, and the larger circumstances (like the fact that Malia's jeans were not torn) led nurse Powell to suspect that she might have been the victim of domestic assault. (App. at 220.)

At some point when Monty's attention was diverted, Powell used the opportunity to point Malia's attention toward a domestic violence form taped to the desk. (Id.) Malia shook her head violently, so Powell dropped the issue. (App. at 220, 223.) She did report the incident to the surgery nurse on duty.

After some x-rays and other tests, hospital staff referred Malia to Dr. Jean Eelma, an orthopedic surgeon who was on call that day. Dr. Eelma examined Malia, who told her that the

2

injury was the product of falling off a horse into a pile of brush. (App. at 252.) Monty was present during this examination, but not present when Dr. Eelma and a nurse took Malia to surgery. (App. at 254, 482.)

Malia was in the custody of nurses during the early period of her recovery. Later in the recovery period, staff permitted Monty to join her. Nurse Brian Guzik found Malia "alert and oriented." (App. at 120.) Dr. Eelma had written Malia a prescription for Darvocet, but Malia requested that the prescription be rewritten for Oxycontin, saying that Darvocet would not work. (App. at 119, 257.) Guzik called Dr. Eelma to report Malia's request, as well as Malia's statement that if Eelma would not change the prescription she knew a Dr. Nienevor who would. (App. at 119, 258.) Eelma did in fact decline, so nurse Guzik called Dr. Nienevor, who likewise refused to prescribe Oxycontin, and Malia then accepted the prescription for Darvocet. (App. at 121.)

While Malia was still in recovery, her mother Ava McSwane arrived at the hospital and informed a nurse that she believed her daughter had not been in a horse accident at all but rather that Monty had assaulted her with a fireplace poker. (App. at 604, 607.) After some consultation, Ava McSwane called the State Police, the Monroe County Sheriff's Department, the Owen County Sheriff's Department, and hospital security. None of the law enforcement agencies responded.

In the meantime, Malia was preparing for release from the hospital, telling nurse Guzik that she was ready to go home. (App. at 122.) As Guzik, Monty, and Malia left the surgery area, two security guards asked Monty to join them in a nearby hallway, where they conducted a search for weapons and a sobriety test. These were both negative. (App. at 508–09, 538.)

As Malia was being wheeled out of the hospital, nurse Jennifer Perantoni told her that she need not depart with Monty. (App. at 477.) Malia's mother pleaded with her not to leave with Monty. Malia responded in no uncertain terms that she wanted to leave with Monty. (App. at 614.) "Stay out of our business," she said. (App. at 378.)

3

Malia and Monty drove away together. They had gone but a few blocks when Monty shot Malia twice, killing her, and then killed himself as well.

McSwane filed a complaint for medical malpractice on behalf of Malia's estate and on behalf of her daughter against Bloomington Hospital and Dr. Eelma. The complaint alleges that the defendants permitted Malia to leave the hospital in the custody of Monty even though they had information suggesting the possibility of further violence. The defendants sought a preliminary determination of law in the Monroe Circuit Court, in the nature of summary judgment. The estate filed a cross-motion for summary judgment.

The trial court granted judgment for the defendants, and they appealed. A divided Indiana Court of Appeals reversed. McSwane v. Bloomington Hosp., 882 N.E.2d 244 (Ind. Ct. App. 2008). We granted transfer, 898 N.E.2d 1217 (Ind. 2008) (table).

**Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. Although the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we "carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." Blake v. Calumet Const. Corp., 674 N.E.2d 167, 169 (Ind. 1996); Wisniewski v. Bennett, 716 N.E.2d 892, 894 (Ind. 1999).

**Medical Providers and Domestic Violence**

As counsel for McSwane properly observes, the elements of a claim for medical malpractice are the same as for any other claim for negligence. The claimant must show that the

4

defendant owed her a duty of care at the time the injury occurred, that the defendant's behavior did not conform to that standard of care, and that the claimant's injuries were proximately caused by the breach. While the existence of a duty is regarded as a matter of law, summary judgment based on application of law to particular facts is rarely suitable.

The parties have largely argued this appeal based on the trial court's finding that there was no duty and that the claim is barred by contributory negligence. McSwane argues that a duty existed on three grounds: that the hospital had assumed a duty to its patients, that the possibility of injury was foreseeable, and that public policy supports legal imposition of a duty.

The hospital has argued that its duty to McSwane did not extend to protecting her from harm caused by Monty off its premises. It counters McSwane's argument about assumption of duty, which rests on the hospital's implementation of an internal domestic violence policy, by noting that there is no indication McSwane relied upon or knew about its policy. Cf. Ward v. First Ind. Plaza Joint Venture, 725 N.E.2d 134, 137 (Ind. Ct. App. 2000). It cites the downside of imposing duties based on an actor's adoption of protocols designed to protect patrons, Lawson v. Lafayette Home Hospital, 760 N.E.2d 1126, 1129–30 (Ind. Ct. App. 2002), namely, the risk that doing so will discourage adoption of prophylactic measures.

The parties' debate over assumed duty seems unnecessary. It is straightforward enough to say that a hospital's duty of care to a patient who presents observable signs of domestic abuse includes some reasonable measures to address the patient's risk. The hospital in this instance took several such actions, including direct suggestions that abuse might be the cause, providing a chance to so indicate outside the earshot of the abuser, security examinations of the suspected abuser, facilitating telephone calls to law enforcement, and declarations that Malia need not leave the hospital with him.

While counsel for McSwane argues that the hospital's failure to separate its patient from her ex-husband so that she could safely report his attack, Appellant's Reply Br. at 4, the record reflects that the hospital did keep them apart on multiple occasions. While counsel does not suggest that the hospital should have physically restrained Malia from leaving the building, it

appears plain that little short of that would have kept her from leaving with Monty. Holding that the hospital's duty encompassed such measures obviously bumps right up against patient autonomy and informed consent, two touchstones of medical malpractice law. See, e.g., Auler v. VanNatta, 686 N.E.2d 172 (Ind. Ct. App. 1997) (treatment without informed consent may be negligence); Ind. Code § 16-36-1-3(a)(1) (2008) (adult patients presumed capable of directing their own healthcare).

While the parties and the trial court have analyzed this aspect of the case through debate over extent of duty, it might just as well be analyzed by asking whether the hospital, construing the facts favorably to McSwane, has succeeded in demonstrating that it did not breach its duty, a burden rarely but occasionally met as a matter of law. Considered as whether the hospital's duty extended to off-premises activities or as whether it breached its duty by assenting to Malia's insistence on departing, the trial court was correct to grant judgment for the hospital.[1]

**Contributory Negligence**

In 1986, the General Assembly altered Indiana's common law by adopting comparative fault as the general rule for negligence actions. The legislature specifically excluded from this alteration actions against qualified healthcare providers for medical negligence, Ind. Code § 34-51-2-1(b)(1) (2008), leaving in place contributory negligence for this and certain other claims.

A plaintiff's contributory negligence operates as a complete bar to recovery. Foster v. Owens, 844 N.E.2d 216, 221 (Ind. Ct. App. 2006). While a plaintiff whose own negligence may have contributed as much as 49 percent to her injury may recover under comparative fault from a defendant whose acts provided 51 percent, under contributory negligence a claimant whose own negligence was even slightly causal is barred from recovery. A court should find a plaintiff contributorily negligent if her conduct falls below the standard to which she is required to

---

[1] McSwane's central contention about the treating physician was that she failed to report the suspected abuse, relying on Ind. Code § 35-47-7-1. As the Court of Appeals' majority noted, this contention was not made in the trial court and thus is not available on appeal. Counsel does not present any other contentions about Dr. Eelma except those that are congruent with claims about the hospital. Eelma thus prevails.

6

conform for her own protection. <u>Faulk v. Northwest Radiolgists, P.C.</u>, 751 N.E.2d 233, 239 (Ind. Ct. App. 2001). A patient's failure to provide accurate diagnosing information or failure to seek recommended treatment are examples of such contributory negligence. See <u>King v. Clark</u>, 709 N.E.2d 1043, 1044–45 (Ind. Ct. App. 1999). The question of contributory negligence is a question of law for the court when only one reasonable inference or conclusion can be drawn from the evidence. <u>Leppert Bus Lines, Inc. v. Rayborn</u>, 133 Ind. App. 325, 331, 182 N.E.2d 260, 263.

Counsel for McSwane contends that having received anesthetic and pain medications Malia could not be contributorily negligent as a matter of law. (Appellant's Br. at 9.) The materials the hospital tendered on summary judgment describe Malia as "alert and oriented" even during her recovery period. (App. at 120.) Nurse Guzik said Malia was "very aware [of] what was going on. . . . I mean she followed commands very well. Ask her a question, she'd answer appropriately." (App. at 120.) The surgeon's conclusion about the debate over pain medication was that Malia "was a person in my opinion that probably was very capable of making her own decisions." (App. at 263.) Counsel for McSwane does not point to any facts that actually contradict this assessment.

While negligence is generally a question for the finder of fact, where the evidence permits only a single inference, contributory negligence may be a matter of law for the court. <u>Funston v. Sch. Town of Muncie</u>, 849 N.E.2d 595, 599 (Ind. 2006). The trial court found that Malia's insistence on leaving with Monty in the face of offers by hospital staff and pleas by her own mother was negligence that contributed to her injury. This was not error.

**Conclusion**

We affirm the judgment of the trial court.

Sullivan, J., concurring in part and concurring in result, agrees with Chief Justice Shepard that summary judgment was appropriate on grounds that the defendants did not breach their duty of

care as a matter of law and, therefore, it not being necessary to address the issue of contributory negligence, expresses no view on it.

Boehm, J., concurs in result.

Rucker, J., dissents with separate opinion in which Dickson, J., joins.

**RUCKER, J., dissenting.**

I agree with the majority that "a hospital's duty of care to a patient who presents observable signs of domestic abuse includes some reasonable measures to address the patient's risk." Slip op. at 6. Although the existence of duty is a matter of law for the courts to decide, a breach of duty is usually a matter left to the trier of fact. King v. Northeast Security, Inc., 790 N.E.2d 474, 484 (Ind. 2003). Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred. Id. Unlike the majority however I do not believe the question of breach in this case can be determined as a matter of law.

The record establishes a lack of communication about suspected domestic abuse between the ER staff and the treating emergency room physician. Although the triage nurse indicated she informed a charge nurse of her suspicions, the record is void of any evidence of an emergency room charge nurse taking any action or informing the treating physician. Appellant's App. at 223-28. The fact that the attending physician states that he was not informed of the suspected domestic abuse indicates that the emergency room support staff did not follow the hospital's adopted domestic violence policies, which requires such communication from staff to the treating physician. Id. at 914-22. This concern is amplified because the attending physician was able to spend time alone with Malia before she was heavily medicated and while the "husband" was out of the exam room. Id. at 890. Thus the doctor, had he been properly informed, could have asked appropriate questions regarding domestic abuse during that period, which could have given the patient a reasonable opportunity to seek refuge.

In sum, the facts in this case raise genuine issues as to whether the hospital breached its duty of care by, among other things, discharging a patient to the custody of a suspected abuser. This is not a matter that can be resolved by summary disposition.

I also disagree with the majority's determination that Malia was contributorily negligent as a matter of law. It is of course the case that in a contributory negligence regime any negligence on the part of the plaintiff, no matter how slight, will bar any action for damages. But contributory negligence is generally a question of fact that is not appropriate for summary judgment if there are conflicting factual inferences to be drawn from the designated evidence. Jones v. Gleim, 468 N.E.2d 205, 207 (Ind. 1984). As the majority correctly declares "the question of contributory negligence is a

question of law for the court when only one reasonable inference or conclusion can be drawn from the evidence." Slip op. at 7. In this case the majority apparently is of the view that because there was evidence that Malia was "alert and oriented" during her period of recovery, "very aware [of] what was going on" and was "capable of making her own decisions," slip op. at 7, she was negligent in some degree and thus the trial court properly granted summary judgment in favor of the Hospital. But summary judgment is rarely appropriate in negligence actions. Rhodes v. Wright, 805 N.E.2d 382, 387 (Ind. 2004). And this is so because "negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person – one best applied by a jury after hearing all of the evidence." Id.

The medical records indicate that, while Malia was present in the emergency room, she received numerous drugs, including Phenergan and the narcotic analgesic Dilaudid to control her pain. Appellant's App. at 285. It was determined that Malia required general surgery to repair her injuries, which was done in an operating room under general anesthesia, with full intubation. Id. at 290, 304. Malia was rendered medically unconscious for over one hour and then given numerous medications, one of which was 10 milligrams of morphine (a narcotic analgesic) for post-operative pain. Id. at 298, 301. Although the record indicates that Malia was thereafter alert and oriented, it is unclear what her true decision-making capabilities and mental state were at the time of discharge. Id. at 308. Furthermore, from the record before us it appears that Malia was discharged from the hospital approximately 90 minutes after the surgery was completed, which leaves open the likelihood that the she had not fully recovered from the general anesthesia and was thus mentally and/or physically incapable of reasonable decision making, or self-protection, when allowed to leave the hospital. Id.

This Court has held:

> The general rule on the issue of the plaintiff's contributory negligence is that the plaintiff must exercise that degree of care that an ordinary reasonable [person] would exercise in like or similar circumstances. . . . We hold that a departure from the general rule is required where the plaintiff is suffering from physical infirmities which impair [her] ability to function as an "ordinary reasonable [person]." The proper test to be applied in such cases is the test of a reasonable [person] *under the same disabilities and infirmities* in like circumstances. On the issue of contributory negligence, mental condition and/or physical incapacities are factors to be considered.

2

Mem'l Hosp. of South Bend, Inc. v. Scott, 261 Ind. 27, 300 N.E.2d 50, 56 (1973) (internal citations omitted). It is clear to me there are different factual inferences that may be drawn from the evidence concerning Malia's mental, emotional, and physical condition. Thus, a fact-finder should determine whether having received general anesthetic, a relaxant, numerous doses of various opiates for pain, and being advised by Hospital not to make any important decisions, Malia was exercising that degree of care that a reasonable person under the same or similar condition would have been expected to exercise when she decided to leave the hospital with her former husband. This is not in my view a matter that can be disposed of by summary disposition. For the foregoing reasons I respectfully dissent and would reverse the judgment of the trial court.

Dickson, J., joins.