

IN THE

# Indiana Supreme Court

FILED

Sep 15 2025, 11:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court


Supreme Court Case No. 25S-CT-245

## Indianapolis Public Transportation Corporation d/b/a IndyGo Public Transportation,

*Appellant*

—v—

## Norma Jean Bush, as Personal Representative of the Estate of Michael Rex Fergerson,

*Appellee*

Argued: February 6, 2025 | Decided: September 15, 2025

Appeal from the Marion Superior Court
No. 49D06-1910-CT-41736
The Honorable Kurt M. Eisgruber, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CT-1483

**Opinion by Chief Justice Rush**

Justices Goff and Molter concur.
Justice Slaughter dissents with separate opinion in which Justice Massa joins.

**Rush, Chief Justice.**

Any Hoosier selected to serve on a civil jury will be instructed by the judge on their distinct and important role: "Judges and jurors perform different tasks. I will instruct you on the law . . . . You will decide the facts in this case."[1] Given this clear delineation of duties, our trial courts can set aside a jury's verdict only in rare circumstances. We review the tragic facts of this case under one such circumstance to determine whether a jury verdict was clearly erroneous as contrary to or unsupported by the evidence.

Here, a pedestrian trying to board an IndyGo bus fell into the road as the bus left a curbside stop, was run over, and died of his injuries. The pedestrian's mother, on behalf of his estate, filed a wrongful death lawsuit against IndyGo alleging negligence. In response, IndyGo asserted that the pedestrian was contributorily negligent, which would bar the estate from recovering damages. During trial, IndyGo moved for judgment in its favor, arguing the evidence—including video footage and the pedestrian's high blood-alcohol content—established the pedestrian was contributorily negligent as a matter of law. But the trial court denied that motion. Then, after the jury found in the estate's favor, IndyGo raised a similar argument in a motion to correct error. But the court also denied that motion.

We affirm. In reaching that decision, we first explain why we review de novo the trial court's denial of IndyGo's motion to correct error. Then, in conducting that review, we hold the evidence presented to the jury does not establish the pedestrian was contributorily negligent as a matter of law. As a result, the verdict was not clearly erroneous as contrary to or unsupported by the evidence.

---

[1] Ind. Model Civ. Jury Inst. 105.

# Facts and Procedural History

The following facts were presented to a six-person jury during a wrongful death trial against Indianapolis Public Transportation Corporation ("IndyGo"). In September 2018, sixty-three-year-old Michael Fergerson lived in Indianapolis with his elderly mother, Norma Bush. He suffered from sciatica—a chronic, painful condition that can make it difficult for a person to stand up or walk—which caused him pain "all the time." He also had a long history of alcohol-use disorder, or alcoholism, that began at a young age. Because of his issues with alcohol, he was unable to "hold down a job for very long," but he helped his mother "enormously around the house" and supported himself through "odd jobs that came along." Though Fergerson had a driver's license, he "took the bus everywhere" with his IndyGo bus pass.

On September 29, Fergerson had been sober for about eight days while caring for his mother. But that morning, he drank a half-pint of vodka, was found intoxicated on a sidewalk, and was taken to the hospital around 11:00 a.m. Fergerson was "confused," "uncoordinated," and performed poorly on dexterity tests. And he told hospital staff "that he typically would drink a pint to a pint and a half of vodka per day." Though he was released sometime later that day after his confusion and disorientation cleared up, he was still "mildly intoxicated."

That evening, Fergerson called his mother from a grocery store, told her he would be home in about ten minutes, and walked to a nearby IndyGo bus stop. He waited on a bench with two grocery bags, and just before 7 p.m., an IndyGo bus pulled up to the stop. But the driver pulled away without letting Fergerson board after she saw him holding a liquor bottle. Thirty-five minutes later, another IndyGo bus arrived at the same stop. The driver did not see Fergerson sitting on the bench. And while the driver checked his mirror for a "split second" before pulling away from the stop, he did not remember whether he had checked that his mirrors were properly aligned. He also did not remember whether he had approached the stop at the distances required by IndyGo policy—either six inches from the curb or three-to-five feet from the curb.

As two passengers exited the bus, Fergerson slowly stood up from the bench, grabbed his grocery bags, and walked toward the front door. But before he reached the door, the driver began to pull away from the stop. As the bus drove away, Fergerson lost his balance and—with his arm outstretched toward the moving bus—fell off the curb and onto the road, resulting in the bus's rear wheels driving over him. An ambulance transported him to the hospital in critical condition with severe injuries to his feet, legs, abdomen, and chest. About two weeks later, he passed away from his injuries. His cause of death was listed as "complications from . . . blunt force trauma." A toxicologist later concluded that at the time of the incident, Fergerson had an approximate blood-alcohol content ("BAC") of 0.261—over three times the legal limit to drive.

About a year after Fergerson's death, Norma filed a complaint for damages against IndyGo in which she alleged negligence as personal representative of Fergerson's estate (the "Estate"). In response, IndyGo raised several affirmative defenses, including that Fergerson was contributorily negligent, which would bar the Estate from recovery.

In April 2023, the case proceeded to a three-day jury trial. The jury heard testimony from six witnesses: Norma; the two bus drivers; Dr. Robert Gregori, the Estate's expert physician; Dr. Vanessa Fitsanakis, IndyGo's expert toxicologist; and IndyGo's Director of Risk, Safety, and Security. The only evidence showing Fergerson's actions immediately before and during the incident was video footage from eight cameras on the IndyGo bus. The jury watched portions of that video at least twelve times during trial.

The jury also presented the court with over fifty questions to ask witnesses throughout trial. They asked about several topics, including Fergerson's sciatica, his earlier visit to the hospital on the day of the incident, and his alcoholism. To the last point, the jury asked Dr. Gregori whether "alcoholics, over the years of drinking, develop a higher-than-average tolerance." He explained that these individuals "almost . . . universally" develop higher-than-average alcohol tolerance. And he noted that a BAC "over" 0.300 "may not affect an alcoholic like it would" a person who is not "used to drinking heavily." Dr. Fitsanakis, however,

testified that 84% of "heavy drinkers" show visible signs of intoxication with the 0.261 BAC Fergerson had at the time of the incident. And she opined that Fergerson's BAC substantially contributed to both his impairment and the incident. Norma testified that while she knew Fergerson had likely been drinking "at that time of the evening," she could not say that he "sounded drunk" on the phone.

After both sides finished presenting evidence, IndyGo moved for judgment on the evidence under Indiana Trial Rule 50, asserting it was "completely undisputable that Mr. Fergerson was contributorily negligent for his own demise." Specifically, counsel maintained that Fergerson acted negligently by reaching "out for a moving bus," that "alcohol was a substantial factor in his demise," and that his conduct was negligent per se because the evidence showed his actions violated two public-intoxication statutes. The Estate's counsel disagreed, maintaining that any conclusions to derive from the video evidence were "in dispute." The trial court denied the motion.

At the beginning of closing arguments, counsel for both parties commented on the jury's attentiveness. The Estate's attorney remarked that the jury was "the most engaged" of his twenty-eight-year career and had asked more questions than he had "ever seen." IndyGo's attorney agreed. During both preliminary instructions at the beginning of trial and final instructions after closing arguments, the trial court instructed the jury on contributory negligence and two relevant statutes: Indiana Code sections 9-21-17-5 and 7.1-5-1-6. The court also ensured the jury had access to the video evidence during deliberations.

The jury ultimately returned a verdict for the Estate and awarded $6 million in damages. But because of statutory limits on damages, the parties stipulated to a final judgment of $700,000. *See* Ind. Code §§ 34-23-1-2, -13-3-4. IndyGo then filed a motion to correct error, arguing that the jury's verdict was "clearly erroneous as contrary to the evidence" and

asking the trial court to "vacate the jury verdict and enter judgment" in IndyGo's favor.[2] The court summarily denied that motion.

IndyGo appealed, and a split panel of our Court of Appeals reversed in a published opinion. *Indianapolis Pub. Transp. Corp. v. Bush*, 240 N.E.3d 172, 174 (Ind. Ct. App. 2024). Based on the video evidence, which was played during oral argument, the majority concluded that "only a single inference can reasonably be drawn: Fergerson was negligent to some degree" by "reaching out toward a moving bus," and that this negligence "was at least one of the proximate causes of his injury." *Id.* at 181. The majority also found Fergerson's conduct "particularly" negligent "in light of the fact that he suffered from sciatica" and "was intoxicated at the time." *Id.* Judge Riley dissented, concluding that the evidence permitted the jury to draw "more than one reasonable inference" as to whether Fergerson was negligent, and thus that question remained "within the realm of the jury's determination." *Id.* at 182–83 (Riley, J., dissenting).

The Estate petitioned for transfer, which we now grant, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Discussion and Decision

The Indiana Constitution expressly protects the jury-trial right in civil cases. Ind. Const. art. 1, § 20. During trial, juries "are the exclusive judges of the evidence," *Rannells v. State*, 18 Ind. 255, 257 (1862), and parties have a "constitutional right . . . to have a jury determine the credibility of the witnesses and the weight that shall be given the evidence and to decide the facts accordingly," *Cosme v. Clark*, 232 N.E.3d 1141, 1149 (Ind. 2024) (quoting *Novak v. Chicago & Calumet Dist. Transit Co.*, 135 N.E.2d 1, 5 (Ind. 1956)). Given this essential role, a trial court can only withdraw an issue from a jury's consideration or overturn a jury's verdict in limited circumstances.

---

[2] IndyGo raised other arguments in its motion to correct error but has not renewed them on appeal.

One circumstance is under Indiana Trial Rule 50(A), which permits a trial court to enter judgment if all or some of the issues before a jury are unsupported by the evidence or if the jury's verdict is contrary to the evidence. Ind. Trial Rule 50(A). The court can enter such a judgment on its own motion or on a party's motion, which can be raised at various stages of the proceeding. *Id.* Here, IndyGo moved for judgment on the evidence during trial and in its post-verdict Trial Rule 59(J) motion to correct error.

Based on IndyGo's challenges, resolving this appeal turns on whether the evidence established that Fergerson was contributorily negligent as a matter of law. In negligence claims against governmental defendants like IndyGo, contributory negligence bars recovery when a defendant establishes the plaintiff failed to act in accordance with a standard of reasonable care and such conduct proximately contributed to the claimed damages. *See Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 598–99 (Ind. 2006); I.C. § 34-51-2-2. Generally, these are factual issues resolved by a jury. *Funston*, 849 N.E.2d at 599. But contributory negligence becomes a question of law when "the facts are undisputed and only a single inference can reasonably be drawn therefrom." *Id.* (quoting *Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984)).

IndyGo—appealing the trial court's denial of its motion to correct error—argues the verdict is clearly erroneous as contrary to the evidence and maintains the evidence establishes Fergerson was contributorily negligent as a matter of law for two reasons. IndyGo first asserts that the video footage alone establishes that Fergerson was negligent in reaching out to touch the moving bus, especially while intoxicated. And it also contends that Fergerson's conduct violated two statutes and thus constituted negligence per se.[3] We disagree on both points.

---

[3] In both its Rule 50(A) motion at trial and on appeal, IndyGo also maintained that Fergerson's conduct constituted negligence per se by violating Indiana Code section 7.1-5-1-3. But we will not consider that statute because it was neither presented to the jury nor relied on in IndyGo's motion to correct error. *See PSI Energy, Inc. v. Roberts*, 834 N.E.2d 665, 668 (Ind. 2005).

In reaching those conclusions, we first explain why we review the denial of IndyGo's motion to correct error under the same de novo standard as if IndyGo had appealed the denial of its Rule 50(A) motion for judgment on the evidence at trial. We then turn to the evidence presented to the jury and hold that the trial court did not err in denying IndyGo's motion because that evidence does not lead to a sole inference that Fergerson was contributorily negligent.

## I. We review the trial court's denial of IndyGo's motion to correct error de novo.

While we generally review a denial of a motion to correct error for an abuse of discretion, *Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 312 (Ind. 2024), we have not determined the appropriate standard of review when the motion asserts a verdict is clearly erroneous as contrary to the evidence. Ultimately, the appropriate standard of review is de novo.

We recently clarified that appellate courts review de novo a trial court's decision on a Trial Rule 50(A) motion for judgment on the evidence during trial. *Cosme*, 232 N.E.3d at 1152. In reaching that conclusion, we explained that a trial court's ruling on such a motion "cannot take on the jury's fact-finding functions of weighing conflicting evidence and assessing witness credibility." *Id.* at 1150. But we also recognized that a trial court can "take a more active role after the jury has returned a verdict," such as on a motion to correct error under Trial Rule 59(J). *Id.* at 1151. At the same time, we did not need to grapple with the appropriate standard of review in that context because the appellants had not appealed the trial court's order denying their motion to correct error. *Id.* at 1147. That is the procedural posture we are confronted with today.

Trial Rule 50(A) permits a trial court to withdraw from a jury any issue that is "not supported by sufficient evidence" or to reverse a verdict that is "clearly erroneous as contrary to the evidence" and enter judgment. T.R. 50(A). When considering such a motion at trial, the court has no factfinding role and simply assesses whether "the evidence supports any reasonable inference in favor of the nonmovant." *Cosme*, 232 N.E.3d at

1152. Yet, as noted above, "the court may take a more active role" when a party files a Rule 59(J) motion to correct error that challenges a non-advisory jury verdict. *Id.* at 1151. When considering such a motion, the trial court reviews the evidence. T.R. 59(J)(7). But the scope of that review and the relief a court can grant turn on the moving party's argument.

In a Rule 59(J) motion to correct error, a party can argue that the verdict is either "against the weight of the evidence" or "clearly erroneous as contrary to or not supported by the evidence." T.R. 59(J)(7). In the first instance, the trial court acts as a "thirteenth juror" and not only reviews the evidence but also weighs it and assesses witness credibility. *Weida v. Kegarise*, 849 N.E.2d 1147, 1152 & n.4, 1155 n.6 (Ind. 2006). And if the court determines the verdict was against the weight of the evidence, it must grant a new trial and make certain prescribed findings. T.R. 59(J)(7). But when the trial court is asked to determine whether the verdict is "clearly erroneous as contrary to or not supported by the evidence," *id.*, the court does not act as a thirteenth juror and thus does not weigh evidence or assess witness credibility, *see Weida*, 849 N.E.2d at 1152, 1155 & n.6. And if the court decides the verdict was clearly erroneous as contrary to or unsupported by the evidence, it can either enter judgment notwithstanding the verdict or order a new trial. T.R. 59(J)(7).

Thus, Rule 59(J)—like Rule 50(A)—permits a trial court to enter judgment if the jury's verdict is "clearly erroneous" because it is not supported by sufficient evidence. In this way, "both rules mandate that the motion be granted when there is insufficient evidence under the law to support a verdict." *Sch. City of Hammond Dist. v. Rueth*, 71 N.E.3d 33, 41 (Ind. Ct. App. 2017) (quoting *Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 990 (Ind. 1977)), *trans. denied*. So when a party raises this Rule 50(A) argument in a Rule 59(J) motion to correct error, the trial court reviews the evidence as if it were considering a Rule 50(A) motion raised before judgment at trial. And in both instances, de novo review is appropriate because the "paper record alone is enough for a reviewing court to assess whether, without any weighing, the evidence supports any reasonable inference in favor of the nonmovant." *Cosme*, 232 N.E.3d at 1152.

Here, since IndyGo asserted in its motion to correct error only that the jury's verdict was "clearly erroneous as contrary to . . . the evidence," we review de novo the trial court's denial of that motion. And so, without weighing conflicting evidence or assessing witness credibility, we now determine whether the evidence—viewed in the light most favorable to the Estate—supports the jury's finding that Fergerson was not contributorily negligent.

## II. The evidence supports reasonable inferences that Fergerson was not contributorily negligent.

A person is contributorily negligent if they fail to exercise the degree of care that an ordinary, reasonable, and prudent individual would exercise for their own protection and safety when faced with similar circumstances. *Funston*, 849 N.E.2d at 598–99. It is therefore appropriate to consider a person's physical incapacity in determining whether they are contributorily negligent. *Mem'l Hosp. of S. Bend, Inc. v. Scott*, 300 N.E.2d 50, 56 (Ind. 1973). While evidence of intoxication can support a showing of contributory negligence, such evidence alone does not establish the defense; there must also be evidence that the intoxication was a proximate cause of the injuries. *See Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1281 (Ind. Ct. App. 1996); *see also* Restatement (Second) of Torts § 283C cmt. d (Am. L. Inst. 1965) ("A drunken man may still act in all respects as reasonably as one who is sober; and if he does so, he is not negligent.") And contributory negligence is established as a matter of law only when undisputed facts lead to a sole inference that a person was "guilty of any negligence, no matter how slight, that proximately contribute[d] to the claimed injury." *Funston*, 849 N.E.2d at 598 n.2.

Recall that IndyGo asserts that the evidence at trial established Fergerson's contributory negligence as a matter of law in two ways. IndyGo maintains that the video footage "stands alone" to demonstrate that "Fergerson was negligent to at least some degree in reaching out to touch a moving bus," particularly given his "highly inebriated state." IndyGo also contends that Fergerson's conduct violated two statutes—

Indiana Code sections 9-21-17-5 and 7.1-5-1-6—and thus constituted negligence per se. We address each contention in turn.

To evaluate whether the video footage from the IndyGo bus's monitoring system alone establishes Fergerson was contributorily negligent, we consider its quality, including "whether the video is grainy or otherwise obscured, the lighting, the angle, the audio and whether the video is a complete depiction of the events at issue, among other things." *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017). In conducting this review, we defer to the factfinder unless the video evidence contradicts the factfinder's conclusion such that "no reasonable person can view the video and come to a different conclusion." *Id.* at 695.

The video footage here, viewed in the light most favorable to the Estate, does not support a sole inference that Fergerson was negligent. The footage initially offers a clear view of him as the IndyGo bus pulls up to the stop and allows passengers to disembark. The majority of Fergerson's body is visible as he stands, sways slightly, and starts to approach the front of the bus with his grocery bags in hand. But at the critical moment the bus begins to drive away from the stop, Fergerson's legs and feet are not visible until after he has fallen to the ground.

Because of the obstructed view of Fergerson's body, particularly at the moment he fell, we cannot conclude that the video presents a single, undisputed account of his conduct during the incident. To be sure, the footage supports a reasonable inference that Fergerson acted negligently by lunging for or reaching out to touch the moving bus, perhaps due to intoxication or his sciatica. But the footage also supports at least two other reasonable inferences that he was not negligent: Fergerson, through no unreasonable action and simply by accident, stumbled and then raised his arm in an involuntary attempt to brace himself as he fell; or the bus's sudden and unexpected momentum caused him to lose his balance as he

carefully approached the bus and involuntarily reached out to stop himself from falling.[4]

Both latter inferences are supported by evidence favorable to the Estate. Fergerson routinely rode the bus without incident. And though he suffered from sciatica, it's reasonable to conclude that he exercised the degree of care of a person facing similar circumstances by getting up and approaching the bus slowly. *See Mem'l Hosp. of S. Bend, Inc.*, 300 N.E.2d at 56. Indeed, "negligence itself cannot be presumed from the mere fact that an accident occurs." *Isgrig v. Trs. of Ind. Univ.*, 256 N.E.3d 1238, 1246 (Ind. 2025).

Evidence of Fergerson's BAC likewise does not disturb the reasonable inferences that he was not negligent, as that evidence does not lead to a sole inference that his intoxication contributed to his injuries. At the time of the incident, Fergerson's BAC was approximately 0.261. But testimony revealed he had struggled with alcohol dependence since childhood and had ridden the bus many times while intoxicated without issue. Dr. Grigori also testified that, for chronic alcoholics like Fergerson, "blood alcohol levels are generally well tolerated when they're higher." He explained that he had seen alcoholics with BAC levels "well above" 0.300 "who are walking, talking, and you wouldn't really notice anything unless you really challenge their balance or something like that." To that point, Norma testified that while she knew Fergerson had likely been drinking "at that time of the evening," she could not say that he "sounded drunk" when he spoke to her on the phone just before the incident.

From this evidence, coupled with the video footage, a reasonable jury could have inferred that Fergerson's tolerance for alcohol minimized any impairment from his BAC level and thus concluded that his intoxication

---

[4] These are not, as the dissent posits, a "description of Fergerson's tragic fall" or "conclusory characterizations." *Post*, at 5. Rather, they are simply two reasonable inferences the jury could have drawn from the video footage when viewing that evidence, as we must, in the light most favorable to the Estate.

was not a proximate cause of his injuries.[5] Thus, because the video footage and other evidence allow for multiple, reasonable inferences about Fergerson's conduct and the cause of his fall, we cannot conclude that IndyGo established he was contributorily negligent as a matter of law.

We likewise cannot conclude that the evidence leads to a sole inference that Fergerson's conduct constituted negligence per se under Indiana Code sections 9-21-17-5 or 7.1-5-1-6. Section 9-21-17-5 prohibits pedestrians from "suddenly leav[ing] a curb or other place of safety" and walking or running into the path of a vehicle "that is so close as to constitute an immediate hazard." I.C. § 9-21-17-5. The video footage permits a reasonable inference that Fergerson did not suddenly leave the curb by walking or running into the path of the bus.

Section 7.1-5-1-6, on the other hand, prohibits a person from being intoxicated when using public transportation and requires that the person's intoxication endangered their own life. I.C. § 7.1-5-1-6(a)(1); *see Sesay v. State*, 5 N.E.3d 478, 485 (Ind. Ct. App. 2014) ("[I]t is the conduct of the intoxicated person that must cause the endangerment."), *trans. denied*. For the reasons provided above, despite Fergerson's high BAC at the time of the incident, the evidence favorable to the Estate does not lead to a sole inference that his intoxication was a proximate cause of his injuries or that he endangered his own life.

To be sure, this is a close case. But our role is not to stand in the place of the factfinder. Instead, we are confined to determining whether, considering the evidence in the light most favorable to the Estate, the only reasonable inference is that Fergerson was contributorily negligent. On this record, we cannot reach that conclusion. Six jurors, who were the most attentive and asked the most questions either party's attorney had

---

[5] Contrary to the dissent's assertion, we are not "necessarily conclud[ing] that Fergerson's injuries were neither 'foreseeable' nor a 'natural and probable consequence' of his severe intoxication." *Post*, at 6. Rather, as repeated throughout this opinion, we are simply concluding that when viewing the evidence in the light most favorable to the Estate—as we must—the jury was presented with evidence from which it could have reasonably found that Fergerson's intoxication did not contribute to the incident.

ever seen, did not find that Fergerson was contributorily negligent. And that jury was properly instructed on contributory negligence and the two statutes on which IndyGo relied, which we presume the jury followed. *Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015). Additionally, both the trial court and a judge of our Court of Appeals found that IndyGo did not establish Fergerson was contributorily negligent as a matter of law. Because the evidence presented to the jury does not support a sole inference to the contrary, we cannot find these conclusions unreasonable.

## Conclusion

For the reasons provided above, we affirm the trial court's denial of IndyGo's motion to correct error.

Goff and Molter, JJ., concur.
Slaughter, J., dissents with separate opinion in which Massa, J., joins.

ATTORNEYS FOR APPELLANT
Bradley M. Dick
Wandini Riggins
Bose McKinney & Evans LLP
Indianapolis, Indiana

Sean T. Devenney
Evan M. Norris
Drewry Simmons Vornehm, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE
David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Bradford J. Smith
Ken Nunn Law Office
Bloomington, Indiana

**Slaughter, J., dissenting.**

I respectfully dissent. I would either deny transfer, letting the court of appeals' opinion stand, or reverse the trial court's judgment and remand with instructions to enter judgment for IndyGo.

I

A

This is a sad and tragic case. On the day Michael Fergerson was struck by an IndyGo bus, he was 63 years old with a history of significant health problems, including sciatica and a lifetime of alcohol addiction. Fergerson lived with and cared for his aged mother. For eight days leading up to the accident, he had been sober. But he relapsed that morning. Bystanders found him lying on a sidewalk with alcohol intoxication. He was taken to a hospital and arrived at the emergency room disoriented and confused. Later that day, once his confusion began to clear and his faculties returned sufficiently, the hospital released him. He resumed drinking after his release.

That evening an IndyGo bus driver saw Fergerson at one of her stops. He was closing a liquor bottle and putting it back inside his jacket pocket. The driver told him she would not allow him on her bus with the bottle, and she pulled away. About a half-hour later, another bus pulled up to the same stop. He remained seated even after the bus arrived. As two passengers were disembarking, he began to stand up slowly from his bench carrying grocery bags. He started toward the front door of the bus. Just before he reached the door, the bus began to move. As the bus pulled away, either he raised an arm and reached toward the moving bus, or he stumbled with his arm outstretched for balance. Either way, his arm hit the bus, spinning him around. He fell from the sidewalk, into the street, and under the bus. Its rear wheels ran over him, causing severe injuries. A conservative estimate of his blood alcohol concentration, BAC, at the time of the accident was .261—more than three times the legal limit to drive. Five days later he was removed from life support and died of complications from his blunt-force-trauma injuries.

B

Fergerson's mother sued IndyGo as personal representative of her late son's estate. A Marion County jury returned a $6 million verdict against IndyGo, which the trial court reduced to $700,000, given the statutory cap for governmental defendants. The court entered judgment accordingly.

On appeal, a divided appellate panel reversed, concluding that the only permissible inference from the undisputed evidence is that Fergerson bears some degree of fault for his tragic death. *Indianapolis Pub. Transp. Corp. v. Bush*, 240 N.E.3d 172, 181–82 (Ind. Ct. App. 2024). Under principles of contributory negligence, which apply when a governmental entity is sued in tort, Fergerson's own negligence should have doomed the Estate's claim. Thus, the panel held, the trial court erred in denying IndyGo's Rule 50(A) motion for judgment on the evidence. *Id.* at 182. Judge Riley dissented, believing it was permissible on this record for the jury to find that Fergerson bore no responsibility for what befell him. *Id.* at 182–83 (Riley, J., dissenting).

Today our Court sides with Judge Riley. It grants the Estate's petition to transfer, reinstates the jury's verdict, and affirms the trial court's judgment. I respectfully dissent. I share the view of the court of appeals' majority that this record points to but one conclusion, which is that Fergerson bears at least some measure of fault for his injuries. This conclusion suffices to establish IndyGo's complete defense of contributory negligence. Thus, I would either deny transfer or, having granted transfer, summarily affirm the panel's decision.

II

As the Court notes, this case comes to us from the trial court's denial of IndyGo's Trial Rule 59(J) motion to correct error, akin to a motion for judgment on the evidence under Rule 50(A). *Ante,* at 8–10. We review the trial court's order de novo, *id.* at 10, and on this record must decide if the evidence supports the jury's verdict that Fergerson was not contributorily negligent.

The Court holds the evidence supports the verdict for two reasons. First, the Court gleans three inferences from video evidence of the accident. Only the first inference, the Court concludes, supports IndyGo's

view that Fergerson was negligent. The other two inferences, the Court believes, support the jury's implicit finding (through its verdict for the Estate) that Fergerson was blameless. Second, the Court concludes that a reasonable view of the evidence is that Fergerson's heavy intoxication "was not a proximate cause of his injuries." *Id.* at 12–13.

Respectfully, I see things differently. The only reasonable inference to be drawn from the video evidence is that Fergerson was contributorily negligent, which should defeat the Estate's claim. *Szabo v. Cwidak*, 558 N.E.2d 855, 857 (Ind. Ct. App. 1990).

A

Contributory negligence is, to be sure, a "harsh rule". *Pope & Talbot v. Hawn*, 346 U.S. 406, 408–09 (1953). Even a plaintiff's "slight degree of negligence" bars any recovery. *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 598 (Ind. 2006). "A plaintiff is contributorily negligent when the plaintiff's conduct 'falls below the standard to which he should conform for his own protection and safety.'" *Ibid.* (quoting *Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984)). As with any negligence inquiry, the "[l]ack of reasonable care that an ordinary person would exercise in like or similar circumstances is the factor upon which the presence or absence of negligence depends.'" *Ibid.*

For many years, "the defense of contributory negligence has come to be looked upon with increasing disfavor by the courts". W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* 453 (5th ed. 1984). Our legislature, aware of the doctrine's harsh results, enacted Indiana's comparative fault act nearly forty years ago to soften the unforgiving common-law rule that denies recovery if the plaintiff bears any fault for his injuries. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 911 (Ind. 2009). For most cases, the legislature replaced the all-or-nothing contributory-negligence framework with a system based on proportional fault. "The basic point of [the comparative fault act] is that a defendant should be required to compensate an injured party only in proportion to the defendant's fault." *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005).

The legislature did not scrap the contributory-negligence rule altogether, though. The rule persists for claims against certain defendants,

including governmental entities like IndyGo. Ind. Code § 34-51-2-2. Thus, the governing rule here is that "a claimant whose own negligence was even slightly causal is barred from recovery." *McSwane*, 916 N.E.2d at 911.

B

Turning to this case, the Court identifies three "reasonable inferences" a jury could draw from the accident's video evidence. *Ante*, at 11–12. The first inference, the Court admits, shows that Fergerson was negligent when he "lung[ed] for or reach[ed] out to touch the moving bus, perhaps due to intoxication or his sciatica." *Id.* at 11. Sciatica is a "painful condition" affecting the lower body. The pain can be "excruciating", according to the record, and cause "trouble" with "walking", "standing", and going "from a seated to standing position". Excessive consumption of alcohol, of course, can cause similar difficulties with mobility and balance. Despite Fergerson's problems with these issues, the Court says two other reasonable inferences suggest Fergerson was not negligent: Either Fergerson "stumbled and then raised his arm in an involuntary attempt to brace himself as he fell; or the bus's sudden and unexpected momentum caused him to lose his balance as he carefully approached the bus". *Id.* at 11–12. Thus, we must affirm the trial court's judgment, the Court concludes, because the evidence "does not support a sole inference that Fergerson was negligent". *Id.* at 11.

I agree that the Court's first proposed inference supports IndyGo's argument that Fergerson was negligent due to his intoxication or his sciatica. But I do not agree that the second and third proposed inferences support the jury's verdict that Fergerson was not negligent.

1

To explain the latter two inferences, the Court posits that Fergerson might have stumbled "by accident" or lost his balance because he reached out "involuntarily" toward the bus to brace or stop his fall. *Id.* at 11–12. Even if the Court's conjecture about what happened is correct—that Fergerson stumbled or lost his balance —that would not vindicate the jury's verdict.

Our negligence standard has long required persons with physical limitations to conform their conduct to that of other similarly situated

persons. *Mem'l Hosp. of S. Bend, Inc. v. Scott*, 300 N.E.2d 50, 58 (Ind. 1973). In other words, we view the conduct of those with physical limitations in relation to that of "reasonably prudent [persons] suffering from the same maladies and disabilities under like circumstances". *Ibid*. In fashioning our standard, we have cited approvingly to prominent tort treatises, including Dean Prosser and Corpus Juris Secundum. *Id.* at 56–58. The latter, CJS, recognizes that "it may be incumbent on one with a physical disability to put forth a greater degree of effort than would otherwise be necessary in order to attain that standard of care which is required of everyone." 65A C.J.S. Negligence § 271 (May 2025). Prosser, in turn, offers as an example that "one who knows that he is subject to epileptic fits, or is about to fall asleep, may be negligent in driving a car." Keeton et al., *supra* at 3, at 176.

These principles apply with special force here given Fergerson's sciatica and voluntary intoxication. A person with physical limitations "must take the precautions, be they more or less, which the ordinary reasonable man would take" if possessed of the same limitations. *Ibid.* One whose limitations include "trouble" with "standing" or "walking" must act as would a "reasonable person" with trouble standing or walking. Such a person must take greater care to avoid the perils of his limitations—like falling or stumbling—than one without such limitations. Yet there is no evidence that Fergerson took extra precautions as he tried to board the bus. So the Court resorts to peppering its description of Fergerson's tragic fall with favorable adverbs: he approached the bus "carefully" and "slowly"; he reached out "involuntarily"; he stumbled "simply by accident". *Ante*, at 11–12. From this, the Court concludes, Fergerson "exercised the degree of care of a person facing similar circumstances". *Id*. at 12 But these conclusory characterizations prove nothing. All they do is beg the question—a logical fallacy that presupposes the very conclusion the Court tries to establish, namely, that Fergerson was not negligent.

Moreover, that Fergerson's stumble may have been "accidental" or "involuntary" is irrelevant to whether he was negligent. *Id.* at 11–12. "Negligence is conduct, and not a state of mind." Keeton et al., *supra* at 3, at 169. "In most instances, [negligence] is caused by heedlessness or inadvertence, by which the negligent party is unaware of the results which may follow from his act." *Ibid.* Put differently, one need not act recklessly—in conscious disregard of a risk or hazard—to be negligent. Our court of appeals knows this well, noting that "inadvertence or lack of

attention" are hallmarks of negligence. *Rakhimov v. State*, 260 N.E.3d 263, 267 (Ind. Ct. App. 2025) (quoting *Whitacker v. State*, 778 N.E.2d 423, 428 (Ind. Ct. App. 2002)), trans. denied. By any measure, it was negligent for Fergerson, a heavily intoxicated 63-year-old man with sciatica, to get too close to a departing bus. Whether he fell "simply by accident" or "involuntarily" is irrelevant to whether he contributed to his own injuries.

Fergerson's resulting fall and fatal injuries are tragic. But he is not without at least some blame for them, even on the most charitable view of this record.

2

The Court rejects this view, in part, because it finds the jury could have concluded Fergerson's intoxication was not a proximate cause of his injuries. Proximate cause is a required element in any negligence action. See *Funston*, 849 N.E.2d at 598. "An act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission." *Id.* at 600. Though the Court does not use these terms, it necessarily concludes that Fergerson's injuries were neither "foreseeable" nor a "natural and probable consequence" of his severe intoxication. *Ante*, at 12–13. I view it differently. Fergerson's resulting injuries were, given his level of intoxication, both "foreseeable" and "natural and probable".

The Court tries to support its contrary conclusion by relying on a medical doctor's expert testimony: "for chronic alcoholics like Fergerson, 'blood alcohol levels are generally well tolerated when they're higher.'" *Id.* at 12. Though Fergerson had consumed enough alcohol to place a "normal person" in a "coma", according to the physician's testimony, he had seen similar cases where the person was "walking, talking, and you wouldn't really notice anything **unless** you really challenge their balance or something like that."

Two problems with this argument are, first, that Fergerson did have balance issues under any view of the evidence. Whether due to sciatica or intoxication, he got up with his hands full and fell into the street and under the rear tires of a moving bus, causing the injuries that cost him his life. The Court tries to avoid this common-sense result by ignoring both

intoxication and sciatica from the two scenarios it believes show Fergerson was non-negligent. *Id.* at 11–12. It does so because our review of a jury verdict, as the Court stresses "repeated[ly]", is limited to viewing the evidence "in the light most favorable to the Estate". *Id.* at 13 n.5. That much is uncontested. Of course, we owe deference to the jury's verdict, but we are not a rubberstamp.

The other problem, as the Court concedes, is that this testimony shows only that "Fergerson's tolerance for alcohol **minimized** any impairment from his BAC level". *Id.* at 12 (emphasis added). This testimony does not foreclose the effects of his intoxication altogether. Even if alcohol played only a minimal role, contributory negligence requires only "slightly causal" conduct to bar recovery. *McSwane*, 916 N.E.2d at 911. To the extent the jury found that alcohol played no part in Fergerson's accident, its verdict was unreasonable as a matter of law.

\* \* \*

Contributory negligence is an exceedingly low bar for a defendant to meet and a correspondingly high bar for a plaintiff to clear. Here, the evidence shows that Fergerson approached a departing bus while heavily intoxicated, struggling with balance problems, and carrying groceries. His resulting fall and death are tragic. But to hold that he was not even slightly at fault for his injuries is unreasonable as a matter of law.

For these reasons, I respectfully dissent.

Massa, J., joins.